11 P.3d 483

STATE of Idaho, Plaintiff–Respondent,

v.

Peter BUTTON, Defendant–Appellant.

No. 24102.

Court of Appeals of Idaho.

Sept. 18, 2000.

John J. Hansen, Twin Falls County Public Defender; Wells B. Ashby, Deputy Public Defender, Twin Falls, for appellant. Wells B. Ashby argued.

Hon. Alan G. Lance, Attorney General; Alison A. Stieglitz, Deputy Attorney General, Boise, for respondent. Alison A. Stieglitz argued.

SCHWARTZMAN, Judge.

Peter Button was found guilty, after a second jury trial, of lewd conduct with a minor child under sixteen years of age. Button was sentenced to seven years, with three years fixed; the sentence was suspended and Button was placed on four years probation. Button appeals. We reverse.

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

Button was indicted for lewd conduct with a minor child under sixteen years of age. I.C. § 18–1508. The indictment alleged that Button had engaged in sexual intercourse with K.P., fourteen years of age, over a period of months from August 25, 1992 to June 2, 1993. The first trial was held in September of 1996.[1] The primary evidence against Button consisted of the testimony of K.P. and Mitko Andreeva, K.P.'s brother-in-law and Button's former friend.

Andreeva testified that Button, then twenty-seven years old, had told him that he had touched K.P.'s genitals and had intercourse with her. Unable to recall the specific date of Button's admission, Andreeva testified that he remembered that Button and K.P. had just returned to K.P.'s home, where Andreeva was visiting, after going somewhere to work for a woman named Sharon and that it was after dark. Andreeva noticed that K.P. looked unhappy and confused as he saw her exit Button's van and walk into her home. Button then gave Andreeva a ride. In the van, Andreeva asked, "Did you do anything to [K.P.]?" to which Button re-

---

1. The transcript of the first trial is not a part of the record in this appeal.

sponded in the affirmative and that he had penetrated her.

Andreeva also testified that in the summer of 1995 he called Button, in K.P.'s presence, and recorded their conversation conducted in the Romanian language. Andreeva said that during the conversation Button admitted to having sex with K.P. Andreeva testified that he translated the conversation for K.P., who did not understand Romanian. Andreeva also related that he later reviewed the transcribed English translation of his tape recording and believed it to be fair and accurate.

On cross-examination, Andreeva admitted to lying to the grand jury about when he first discovered that Button had engaged in intercourse with K.P. On redirect examination and when called as a defense witness, Andreeva testified that he had told the grand jury that he first learned of Button's sexual relations with K.P. during the phone conversation in 1995, not in his previous conversation with Button in the van. During deliberations the jury deadlocked and a mistrial was declared.

Prior to the second trial, the indictment was amended on the state's motion to reflect a single incident of sexual contact on August 25, 1992. A second trial was held beginning on April 8, 1997. Again, the main evidence against Button was to be the testimony of K.P. and Andreeva.

On the first day of trial, K.P. testified that on August 25, 1992, Button drove her in his van to the home of a woman so that they could collect payment for yard work K.P. and Button had done for her. While waiting for the woman to arrive home, Button pushed K.P. to the floor of the van, pulled off her shorts and underwear and penetrated her vagina with his penis. On cross-examination, K.P. testified that Button had intercourse with her on other occasions, until she moved with her family to Seattle in June of the following year. K.P. testified that Button had a scar on his lower abdomen, but acknowledged that she had never seen Button's penis. K.P. also testified that she had visited her sister and Andreeva in August 1995,

staying about a week, and during that time Andreeva had recorded a telephone conversation with Button, but she could not recall if she was present at the time the call was made.

As trial resumed on the second day, Andreeva apparently missed his flight from Seattle, Washington to Twin Falls, Idaho and was, therefore, not present in the courtroom on the morning he was to testify. Rather than asking for a continuance, the state moved to have Andreeva declared unavailable under I.R.E. 804(a)(5). In its offer of proof, the state asserted:[2]

Judge, the facts as I know it, is that we contacted Mr. Andreeva, Mitko Andreeva, who is the witness which is unavailable, on numerous occasions previous to this hearing. At a previous hearing, he was present and testified.

The arrangements that we made each time was that we had contacted him, he was voluntarily making himself available to testify. We provided transportation and lodging for him and paid for his plane ticket, set it up. He appeared at the previous hearing that we had with no problems, no hitches.

. . .

This morning he had called and spoke to Robin Saldiva in our office indicating that we had arrangements for him to fly into, and be here – or his arrival time, I know, in Twin Falls was at 9:25 this morning.

The call that she received this morning indicated that on the way to the airport he had been stopped, for some reason. My interpretation of that was that he got a traffic ticket. I don't know that for certain, but he was stopped, the result of which is he missed his flight.

The logistics of the situation is, Judge, that he could obtain another flight which would leave at 10:30 but he would not arrive in Twin Falls until 2:00 p.m. today. That, Your Honor, would place him here after the state's case-in-chief would be over with even, and I don't know that the court, would be willing to continue this until he could get here.

2. This colloquy occurred at 9:30 a.m. on the second day of trial.

. . .

He had not indicated an unwillingness to be here; however, I would note to the court, I do personally have some concerns about him ultimately showing up.

The state again represented that there was no indication that Andreeva acted intentionally in missing his flight or was indicating an unwillingness to be present and that the state would pay his lodging. Nevertheless, the state asked that Andreeva be declared unavailable, asserting that the state had been unable to secure his attendance or testimony by process or other reasonable means.

Counsel for Button objected, arguing that the state had never subpoenaed Andreeva and that use of his prior testimony would deny Button his right of confrontation. The state argued that the language of I.R.E. 804(a)(5), "the proponent of his statement has been unable to procure the declarant's attendance by process or other reasonable means," was in the disjunctive and therefore, the state did not need to have Andreeva subpoenaed in order to have him found unavailable. The state acknowledged that Andreeva resided out of state, but explained that it had opted not to seek an out-of-state subpoena.

The district court found that Andreeva was an out-of-state witness for whom the state had purchased transportation, that he was not present at trial, and that waiting until two o'clock to see if Andreeva would arrive would delay the proceedings, requiring another full day of trial. The court then found and concluded that the state had exercised due diligence in attempting to procure Andreeva's testimony and that Andreeva was unavailable under I.R.E. 804(a)(5).

Following the testimony of the state's social worker and counselor, Andreeva's testimony was read into the record, and the state's Romanian translator testified about the translation of Andreeva's recorded telephone conversation with Button. The transcript of Andreeva's telephone conversation with Button was admitted into evidence against Button.

Button adamantly denied the charge. During his case-in-chief, Button and seven other witnesses testified in Button's defense. A portion of Andreeva's testimony from the first trial concerning his motive for lying to the grand jury—fear of Button—was also read into the record in Button's defense.

The jury returned a verdict of guilty to lewd conduct with a minor child under sixteen years of age. At sentencing, the district court imposed a suspended unified term of seven years, with three years fixed and placed Button on probation for four years.

## II.

## STANDARD OF REVIEW

■■■ On review, rules of evidence are treated like statutes. *State v. Moore*, 131 Idaho 814, 821, 965 P.2d 174, 181 (1998). The interpretation of a rule of evidence, like the interpretation of a statute, is reviewed *de novo*. *Id.* However, the decision to admit hearsay evidence under an exception is reviewed for abuse of discretion. *Id.* at 822, 965 P.2d at 182.

■■■ In the event error is found in either the interpretation of the rule or admission of evidence under that rule, we must determine whether the error was harmless. The test for harmless error is "whether a reviewing court can find beyond a reasonable doubt that the jury would have reached the same result without the admission of the challenged evidence." *Id.*

## III.

## DISCUSSION

■■■ Idaho Rule of Evidence 804 provides in pertinent part:

(a) Definition of Unavailability. "Unavailability as a witness" includes situations in which the declarant:

. . .

(5) is absent from the hearing and the proponent of declarant's statement has been unable to procure declarant's attendance (or in the case of a hearsay exception under subdivision (b)(2), (3), or (4), the declarant's attendance or testimony) by process or other reasonable means.

Idaho Rule of Evidence 804(b) provides that the following is admissible hearsay if the declarant is unavailable as a witness:

(1) Former testimony. Testimony given as a witness at another hearing of the same or different proceeding, ... if the party against whom the testimony is now offered, ... had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.

In *Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), the United States Supreme Court set forth an approach for determining when incriminating statements, admissible under an exception to the hearsay rule, also meet the requirements of the Confrontation Clause. "A statement of a declarant, who will not be a witness at trial, is admissible only if the prosecution establishes that the declarant is unavailable and if the statement bears adequate indicia of reliability." *State v. Gray,* 129 Idaho 784, 792, 932 P.2d 907, 915 (Ct.App.1997) (citing *Roberts,* 448 U.S. at 66, 100 S.Ct. at 2539, 65 L.Ed.2d at 608).

■ Unavailability of a witness's testimony is a preliminary fact, which must be established by the proponent to the satisfaction of the trial court. *People v. Enriquez,* 19 Cal.3d 221, 137 Cal.Rptr. 171, 561 P.2d 261 (1977). In the present case, Andreeva was not present in Twin Falls at the precise time he was to be called as a witness at trial. While he was at that moment not physically present, the prosecutor's offer of proof indicated that Andreeva was still readily available. The state expressed doubt whether Andreeva would in fact appear at trial, but Andreeva's willingness to appear was never tested. The state in this case knew when Andreeva could be expected to arrive on a later flight that day—some time after 2:00 p.m. Testing Andreeva's willingness to testify required only arrangements for Andreeva to make a later flight and a continuance or rearrangement of the presentation of witnesses to accommodate Andreeva's later arrival.[3] By not seeking a continuance to allow Andreeva time to make a later flight, when all indications were that he was ready, willing and able to take a later flight and that he would arrive in time to testify that afternoon, the state failed to use "other reasonable means" to procure Andreeva's testimony.[4] I.R.E. 804(a)(5).

■ As several courts have noted, the unavailability of a witness must be of such duration that a continuance is not a practical alternative. *See, e.g., United States v. Amaya,* 533 F.2d 188, 191 (5th Cir.1976) (affirming use of the witness's prior trial testimony at a second trial where between the trials the witness had suffered a head injury and had no memory of events testified to in the first trial). Before a witness is "unavailable" for purposes of I.R.E. 804, the state must make a good faith effort to obtain the witness's presence at trial. *State v. Sweeney,* 45 Wash.App. 81, 723 P.2d 551, 554 (1986). We interpret I.R.E. 804(a)(5)'s "other reasonable means" language to include, as a matter of law, good faith reasonable efforts to procure the witness's testimony during the trial itself where, as here, the witness was apparently willing and able to testify and all that was required was a request by the state for a brief continuance and transportation ar-

---

**3.** Andreeva's missed flight and the prospective delay in his testimony was no more compelling evidence of unavailability than would be a call from an out-of-county witness explaining that he had a flat tire or other breakdown which would cause him to be several hours late for court.

**4.** The state admittedly did not utilize the Uniform Act to Secure Attendance of Witnesses in Criminal Cases, I.C. § 19–3005, to issue an out-of-state subpoena to Andreeva. Given our ruling herein, we do not need to determine whether the state's decision not to pursue an out-of-state subpoena, in and of itself, constituted a lack of good faith reasonable efforts to obtain Andreeva's testimony at Button's second trial. We do note, however, that use of interstate process would have provided Andreeva with additional incentive to attend and the threat of court imposed sanctions for failure to comply. The far better procedure would surely have been to utilize I.C. § 19–3005 to seek an out-of-state subpoena. *See State v. Cross,* 132 Idaho 667, 669–670, 978 P.2d 227, 229–230 (1999) (trial court erred in admitting preliminary hearing testimony where the state relied upon a mailed subpoena, rather than using the procedure set forth in I.C. § 19–3005(2), in attempting to secure attendance of a witness known to be in California; such constituted lack of diligent and good faith efforts to locate the witness and secure his presence at trial).

rangements on a later flight. *See State v. Rivera*, 51 Wash.App. 556, 754 P.2d 701, 702–704 (1988) (knowing that the state's witness lived with her mother, the state failed to exercise good faith reasonable effort to procure the witness's testimony in failing to ask the mother where the witness might be located during a three-day continuance granted by the court). *See also State v. Widenhofer*, 286 Mont. 341, 950 P.2d 1383, 1390 (1997) (state failed to show good faith reasonable efforts to procure the witness's testimony in failing to relate more timely efforts than subpoenaing witness the night before trial). We hold that by failing to request a continuance under the circumstances of this case, the state failed to exercise good faith reasonable effort to obtain the testimony of Andreeva.

The district court's finding of unavailability is not supported by the record and is clearly erroneous. The unavailability exception provided for under I.R.E. 804(a)(5) is not a rule of simple convenience or a mere procedural technicality. Considerations of time, money savings and inconvenience to the trial process must be strictly balanced against the fundamentally important right of confrontation and the jury's evaluation of the credibility of witnesses. Accordingly, we conclude that the district court abused its discretion by admitting Andreeva's testimony from the first trial.

We also conclude that the erroneous admission of this prior testimony necessitates reversal of the conviction. Idaho Criminal Rule 52 provides: "Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded." An error in the admission of evidence will not warrant a new trial if the appellate court can conclude, beyond a reasonable doubt, that the jury would have reached the same result had the error not occurred. *State v. Pecor*,

132 Idaho 359, 363, 972 P.2d 737, 741 (Ct. App.1998); *State v. Woodbury*, 127 Idaho 757, 761, 905 P.2d 1066, 1070 (Ct.App.1995).

Here, Button presented testimony from eight witnesses. The state had only two primary witnesses. The evidence in Button's first trial was substantially that presented in the second trial. The first trial ended in a hung jury. Andreeva's testimony was not merely corroboration of K.P.'s testimony; it was evidence of an independent admission by Button to Andreeva. Additionally, Andreeva's testimony was essential to establishing the foundation for the admission of the taped telephone conversation itself, which Andreeva had recorded and provided to the state for transcription and translation into English; a conversation that K.P. could not recall at the second trial and could not have understood without translation from Romanian by Andreeva.[5]

Due to the critical nature of Andreeva's testimony—as evidence of an independent admission and as foundation for the single most damaging piece of evidence against Button, the transcript of the telephone conversation with Andreeva—we cannot say, beyond a reasonable doubt, that a jury would have reached the same result had Andreeva's testimony from the first trial not been erroneously admitted at the second trial. Accordingly, Button's conviction must be reversed.

## IV.

### CONCLUSION

The state failed to establish that Andreeva was unavailable, leading the district court to erroneously admit his testimony from Button's first trial. The admission of Andreeva's prior testimony was not harmless. Accordingly, Button's judgment of conviction for lewd conduct with a minor child under six-

---

**5.** At oral argument the state argued that Button stipulated to the admission of the transcribed and translated telephone conversation with Andreeva. The record does not support the state's assertion. Rather, counsel for Button, after the district court had overruled his objection to the admission of Andreeva's testimony from the first trial, did not object to the admission of the transcript after Andreeva's testimony had been read into the record. Andreeva's testimony was the foundation for the transcript of the telephone conversation. After objecting to the admission of Andreeva's testimony from the first trial, counsel was not required to object to the admission of the transcript of the telephone conversation. Counsel's lack of objection was not a stipulation to the admission of the transcript of the telephone conversation without foundation.

teen years of age is reversed and the case is remanded for a new trial.

Chief Judge PERRY and Judge Pro Tem MOSS concur.