**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket Nos. 39255/40628**

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | |
| | ) | **2014 Opinion No. 6** |
| Plaintiff-Respondent, | ) | |
| | ) | **Filed: February 4, 2014** |
| v. | ) | |
| | ) | **Stephen W. Kenyon, Clerk** |
| LEE ODELL FAIR, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Deborah A. Bail, District Judge.

Judgment of conviction, <u>affirmed</u>.

Rebekah A. Cudé, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Daphne J. Huang, Deputy Attorney General, Boise, for respondent. Daphne J. Huang argued.

LANSING, Judge

After a jury trial, the district court entered a judgment of conviction sentencing Lee Odell Fair for the aggravated assault of Gerald Blakely. Fair argues that the trial court erred by excluding the testimony of six witnesses who offered evidence that the crime was committed by an alternative perpetrator, Richard Laine. We affirm the judgment of conviction.

## I.

## BACKGROUND

The State presented evidence that Fair committed aggravated battery by striking Blakely outside Dino's, a bar. Blakely went to Dino's with his girlfriend, Shelly Thompson; a friend, Joel Hoffman; and Hoffman's girlfriend, Laura Suydam. They arrived at approximately 11:30 p.m. The group split up at that time, engaging in different activities. Hoffman spent the night playing pool with three other men, including Fair. Fair and Hoffman were acquaintances who may have attended summer school together. An altercation arose over a twenty-dollar

1

wager on a billiards game; there may have been a physical scuffle, and abusive language was used. Hoffman reported that Fair and another billiards player told Hoffman "let's go outside." However, the dispute was broken up before it could further escalate. Later that evening, Blakely and Hoffman went outside of the bar into the well-lit parking lot. Thompson and Suydam followed the men outside, but exited the building somewhat later than the men. Outside, the three men previously involved in the billiards altercation, including Fair, indicated that they wanted to fight Hoffman.[1] Blakely was standing ten to fifteen feet away from Hoffman when Fair interlocked his arm with Blakely's arm. In response to being grabbed, Blakely told Fair that he was "a lover, not a fighter." Fair did not respond to Blakely's self-description.

One of the billiards players struck Hoffman in the back of the head. Suydam responded by jumping on the assailant's back. The assailant then struck Suydam and Hoffman grabbed that man and tackled him. Blakely responded to Hoffman being struck by taking a step toward his car and away from the fight, seeking to avoid becoming embroiled in the fight. According to the State's witnesses, Fair then punched Blakely, knocking him to the ground. Thereafter, Fair pushed Hoffman off of the initial assailant. The three billiards players, including Fair, then fled the scene. Blakely, Thompson, Suydam, and Hoffman all later testified that Fair and Blakely were off to the side of the main fight. Blakely and Thompson both testified they saw Fair hit Blakely.

Blakely suffered significant damage to his teeth, lips, and face, including a broken jaw. Blakely said that he was not knocked out, but Thompson said that Blakely was rendered unconscious for three to five minutes. The next morning, Sunday, Blakely went to the police station where he reported the events and described the assailant. Fair was quickly identified as the alleged assailant due to a large tattoo saying "Boise" across his neck and a smaller tattoo below his eye.

At trial, Fair sought to exculpate himself by showing that it was another person, Richard Laine, who struck Blakely. The trial court permitted Fair to submit an offer of proof concerning the alleged alternative perpetrator. Fair called several witnesses in support of this contention. The first witness was Laine himself, who began by asserting his Fifth Amendment right against

---

[1]     Thompson indicated it may have been as many as seven men, but she also admitted that her recollection might be inaccurate in some respects because of the stress of the situation.

self-incrimination. However, after he was instructed by the district court that he could assert that privilege only in response to individual questions, he never invoked the privilege again. Laine denied being at Dino's during the month of October 2010. While he admitted that he had spoken with a defense investigator, he testified that he had not told the investigator he was at Dino's at that time. The defense asked Laine numerous questions, all inquiring as to whether he ever admitted to being at the bar, striking Blakely, or causing any particular injury. He denied each allegation.

Larson Firth, Laine's former girlfriend, then testified that Laine had told her he had been involved in a fight at Dino's between August and October of 2010. According to her, Laine said that people at the bar had intended to assault Fair and that Laine intervened by striking a person and knocking that person out. The State adduced evidence suggesting that Firth was a biased witness because Laine and she broke up shortly after she had his name tattooed on her body.

Next, Nina Lucas testified that Laine told her that he had been at Dino's and had "cold-cocked" an "older guy." The defense asserted that this tended to show that Laine struck Blakely because Blakely is approximately twenty years older than Fair and Laine.

Another witness, Leonard Rood, testified that he overheard a discussion between Laine and a third person who came to his home to purchase drugs. The third person stated that Laine "did a flying superman punch over [Fair's] shoulder and dropped this guy," and Laine did not deny it nor respond in any way. The State adduced testimony tending to show that Rood was biased against Laine because Laine had implicated him in a burglary and grand theft case.

Norman Perez testified that he had met Laine in jail and had been a cellmate to Fair. He testified that, while all three were in jail, Laine and Fair spoke several times. According to Perez, Fair asked Laine if he was "going to stand up for what you did" and complained that he was facing charges because Laine "punched out that dude." Laine responded by saying he "wasn't going to tell on himself" but would "try to find somebody to go to court for him" and have that person admit that he committed the crime.

Finally, Tommy Basco testified that he overheard a call between Fair and a person Basco assumed to be a detective. The caller indicated that he had found Fair on Facebook, knew Fair had been at Dino's, and did not believe Fair committed the crime but did believe that Fair knew who had committed the crime. Thereafter, the caller threatened to blackmail Fair, telling him "If you don't tell me who it is, I'm going after you."

3

The trial court held that each witness's testimony was inadmissible hearsay. Fair argued that the evidence was admissible under Idaho Rule of Evidence 804(b)(3), which provides an exception to the hearsay rule for certain statements against interest, but the court rejected that proposition. The testimony of Firth, Rood, and Perez was held to be inadmissible because the purported statements were not statements against the declarant's interest. The court said that as to Firth's testimony, Laine's purported statement that he acted in defense of others would not be a statement against his penal interest; and that as to Rood's testimony, the purported statement by a third party was insufficient to be treated as an adopted admission and therefore was not a statement against Laine's interest. The district court also said that the context of that purported conversation, a drug transaction, was not one where one would be expected to protest one's innocence. Finally, Perez's testimony was not treated as a statement against interest because Laine never indicated that he committed a culpable act, but rather, indicated a willingness to conspire to have a third person take the blame. The court also held that the witnesses' testimony did not meet the reliability requirement set forth in I.R.E. 804(b)(3) as interpreted by *State v. Meister*, 148 Idaho 236, 220 P.3d 1055 (2009). Additionally, the court held that several of the statements were not relevant because they could indicate that Laine struck Hoffman and not Blakely.

On appeal, Fair asserts error in the exclusion of these witnesses' testimony.

## II.

## ANALYSIS

A statement made by an out-of-court declarant that is offered for the truth of the matter asserted is hearsay and therefore not admissible unless an exception applies. I.R.E. 801, 802. The purpose of the rule against hearsay testimony is to assure that testimony presenting assertions of fact can be tested by cross-examination of the person making the assertion. *State v. McDonald*, 141 Idaho 287, 288, 108 P.3d 434, 435 (Ct. App. 2005); *State v. McPhie*, 104 Idaho 652, 655, 662 P.2d 233, 236 (1983); *see also* 2 KENNETH S. BROUN, MCCORMICK ON EVIDENCE §§ 244, 273 (6th ed. 2006) (the hearsay rule promotes compliance with the "three conditions under which witnesses ordinarily are required to testify:  oath, personal presence at the trial, and cross-examination"). A trial court's decision to admit hearsay evidence under an exception is reviewed on appeal for abuse of discretion. *State v. Button*, 134 Idaho 864, 867, 11 P.3d 483, 486 (Ct. App. 2000); *see also State v. Watkins*, 148 Idaho 418, 421, 224 P.3d 485, 488 (2009).

4

Fair sought admission of testimony about Laine's alleged out-of-court statements under the hearsay exception in I.R.E. 804(b)(3), which provides:

> The following are not excluded by the hearsay rule *if the declarant is unavailable as a witness:*
>
> (3) Statement against interest. A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject declarant to civil or criminal liability, or to render invalid a claim by declarant against another, that a reasonable man in declarant's position would not have made the statement unless declarant believed it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.

(emphasis added). As the emphasized language states, this hearsay exception applies only when the declarant is unavailable to testify. As relevant here, Rule 804(a) defines unavailability to include circumstances where the witness "(1) is exempted by ruling of the court on the ground of privilege from testifying concerning the subject matter of the declarant's statement; or . . . (3) testifies to a lack of memory of the subject matter of declarant's statement." I.R.E. 804(a). The proponent of the hearsay evidence bears the burden of proving the declarant's unavailability. *State v. Perry*, 144 Idaho 266, 269, 159 P.3d 903, 906 (Ct. App. 2007); *Button*, 134 Idaho at 868, 11 P.3d at 487.

The district court here concluded that Laine was unavailable as a witness but excluded the hearsay evidence on other grounds. We conclude that we need not address the district court's rationale for excluding the evidence because Fair has not shown that Laine was unavailable as a witness. Where a decision of the trial court was correct, an appellate court may affirm the decision on grounds differing from those relied upon by the trial court. *Leer v. State*, 148 Idaho 112, 114, 218 P.3d 1173, 1175 (Ct. App. 2009).

Unavailability based upon a privilege under I.R.E. 804(a)(1) is not shown when the witness is merely reluctant to testify. For example, in *State v. Barcella*, 135 Idaho 191, 16 P.3d 288 (Ct. App. 2000), we held that a witness's preliminary hearing testimony was not admissible under Rule 804 merely because the witness at one point said that he would "take the Fifth Amendment on that" and refuse to testify at trial. When questioned by the court and prosecutor about his refusal to testify, the witness said he had "pretty much made up [his] mind" not to testify because he was fearful of retribution for being a snitch. In response to the court's questions, he stated that he did not believe that his testimony might make him subject to any

5

criminal charge. We held that the trial court erred in holding that the witness was unavailable, and thereupon admitting his preliminary hearing testimony under I.R.E. 804, without first ordering the witness to testify under the direct threat of contempt.[2] *Barcella*, 135 Idaho at 202-03, 16 P.3d at 299-300.

We also addressed the admissibility of hearsay testimony about a purported alternate perpetrator's out-of-court confession in *Milburn v. State*, 135 Idaho 701, 708, 23 P.3d 775, 782 (Ct. App. 2000). When discussing the application of I.R.E. 804(a)(1), we held that the proponent of the evidence failed to show that the declarant was unavailable because the declarant was never called as a witness and never invoked the Fifth Amendment privilege against self-incrimination. *Id.* at 708-09, 23 P.3d at 782-83.

In the present case, when Laine's testimony was presented in Fair's offer of proof, Laine initially attempted to invoke his Fifth Amendment privilege, but did so in an erroneous manner. After he was sworn in and stated his name for the record, the first question Laine was asked was whether he was "familiar with a bar called Dino's." Laine indicated he was not familiar with the bar. Next, defense counsel asked Laine whether he recalled "ever going to Dino's." In response, Laine asserted his Fifth Amendment right against self-incrimination. However, the district court then explained the scope of the Fifth Amendment privilege:

> The way it works is this: A witness can take the Fifth Amendment, but what you have to do is you have to take it with respect to each question counsel asks you, and if it isn't a question that could incriminate you, then you have to answer the question.

Laine indicated that he understood the court's explanation. Thereafter, he never again asserted his right against self-incrimination. Furthermore, after Laine's invocation of the right, Fair's counsel rephrased the question that triggered the invocation and Laine answered it. Laine then continued to answer every question that was put to him. Thus, Laine was not exempted from testifying "on the grounds of privilege."

An alternative basis upon which a witness may be deemed unavailable is "a lack of memory of the subject matter of declarant's statement." I.R.E. 804(a)(3). Laine was frequently asked questions phrased in terms of his recollection. Indeed, all but two of defense counsel's

---

[2]     Implicit in this Court's holding was the recognition that the witness had not made a valid invocation of the Fifth Amendment privilege as he acknowledged that his testimony would not be self-incriminating.

questions were asked using the form "are you familiar" or "do you recall." For several reasons, Laine's responses do not show that he lacked a memory of the subject matter. First, because of the way defense counsel phrased the questions, the resulting answers are ambiguous. For example, Laine was asked if he recalled "being at Dino's in October 2010." His answer, "no," is ambiguous. It could indicate that Laine does not recall an event that actually occurred, or it could indicate that Laine does not recall being at the bar because he was never at the bar. Second, most of the questions did not inquire about Laine's memory of events at Dino's; rather, they asked whether Laine recalled making the statements attributed to him by the hearsay witnesses. That was not the relevant inquiry. "[I]t is not a lack of memory of having made the out-of-court statements that is pertinent under I.R.E. 804(a)(3), but rather lack of memory of the 'subject matter' of the out-of-court statements." *Milburn*, 135 Idaho at 708, 23 P.3d at 782. As stated in *Lamonica v. Safe Hurricane Shutters, Inc.*, 711 F.3d 1299, 1317 (11th Cir. 2013), "The fact that the witness does not remember making the statements themselves is irrelevant." Third, Laine frequently indicated he *did* recall certain people or events. For all of these reasons, we hold that Fair failed to establish that Laine was unavailable as a witness.

The hearsay exception for statements against interest, I.R.E. 804(b)(3), upon which Fair relies, requires unavailability of the declarant. Because Fair failed to show that Laine was unavailable, the proffered evidence of Laine's out-of-court statements was properly excluded.

Fair having shown no trial error, the judgment of conviction is affirmed.

Chief Judge GUTIERREZ and Judge GRATTON **CONCUR.**

7