IN THE SUPREME COURT OF THE STATE OF IDAHO
Docket No. 34846

STATE OF IDAHO,

    Plaintiff-Respondent,

v.

JOSEPH EVERETT PERRY,

    Defendant-Appellant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Boise, September 2008

2010 Opinion No. 130

Filed: December 7, 2010

Stephen W. Kenyon, Clerk

**SUBSTITUTE OPINION. THE COURT'S PRIOR OPINION DATED JULY 23, 2010 IS HEREBY WITHDRAWN.**

Appeal from the District Court of the First Judicial District, State of Idaho, Kootenai County. Hon. John P. Luster, District Judge.

District court conviction and sentence, affirmed.

Molly J. Huskey, State Appellate Public Defender, Boise, for appellant. Elizabeth A. Allred, Deputy State Appellate Public Defender argued.

Hon. Lawrence G. Wasden, Attorney General, Boise, for respondent. John Charles McKinney, Deputy Attorney General argued.

---

BURDICK, Justice

    Appellant Joseph E. Perry was convicted of two counts of sexual battery of a child under the age of sixteen, for acts against T.P., and two counts of misdemeanor battery for acts against H.P. Perry asks us to reverse his conviction based on several alleged errors committed during trial, including the exclusion of I.R.E. 412 evidence offered to impeach T.P.'s allegations against Perry, the exclusion of I.R.E. 613 evidence offered to impeach the foster mother's testimony, and various acts of prosecutorial misconduct. Perry argues that these errors, individually, are either fundamental and/or not harmless. Alternatively Perry contends that even if each error is

1

individually found to be harmless, in the aggregate they constitute reversible error under the cumulative error doctrine.

We hold that the evidence proffered by Perry was properly excluded. In addition, we hold that the trial court properly sustained the only objection made at trial that pertained to prosecutorial misconduct, and the unobjected to acts of prosecutorial misconduct do not rise to the level of fundamental error. Finally, we find that the cumulative error doctrine is inapplicable as Perry did not preserve any error for consideration on appeal. Therefore, we affirm Perry's conviction.

## I. FACTUAL AND PROCEDURAL BACKGROUND

From February to April, 2005, while T.P. (age 11) and H.P. (age 13) were living in foster care, Appellant Joseph E. Perry started taking the girls for overnight visits at his home in an attempt to reunite with his two daughters. Later that June, T.P. and H.P. revealed to their foster mother that Perry had occasionally invited one girl to sleep with him during these visits, and while the girl was lying in bed facing away from her father, Perry moved against her and rubbed his penis against the girl's back or buttocks in an up and down motion. Based on these allegations Perry was charged with four counts of lewd and lascivious conduct with a minor under sixteen years old, I.C. § 18-1508.

Before trial, Perry filed a motion in limine to present testimony/evidence that T.P. made a prior false allegation of a sex crime against H.P., i.e., that in 2004, T.P. had made statements, which were subsequently partially retracted, that H.P. touched T.P.'s breasts twice and sprayed T.P.'s genitals with a shower head during a family camping trip. The incident was reported to the girls' social worker, but after investigation, the Idaho Department of Health and Welfare (Department) determined that no further action was necessary.

At trial, the prosecutor called the foster mother as her first witness. Without objection from defense counsel, the prosecutor asked the foster mother whether the girls had ever been dishonest with her. She replied that they had, but only about "normal kid stuff." Later, on redirect examination, the prosecutor asked the foster mother to specify what types of things the girls had lied about in the past. Again, the foster mother indicated relatively minor things, such as messes in the house. Defense counsel made a tactical decision to not object to this testimony in order to lay the foundation for the I.R.E. 412 evidence. On re-cross-examination, defense counsel asked the foster mother if she recalled T.P.'s statements regarding the 2004 camping

2

incident, and whether the foster mother considered that more than a minor thing. Before the foster mother could answer, the prosecutor objected to defense counsel's line of questioning. The district court sustained the objection, but indicated that admissibility of the I.R.E. 412 evidence could be addressed later in the trial.

Before T.P. took the stand, defense counsel reasserted his request to present the I.R.E. 412 evidence to impeach T.P.'s allegations against Perry. The report detailing T.P.'s allegations against H.P. stated that H.P. had grabbed T.P.'s breasts twice and placed a shower head on T.P.'s genitals and buttocks, and defense counsel quickly focused the district court's attention on the incident with the shower head. Defense counsel argued that because the shower spraying incident between the girls constituted a "sex crime" under I.R.E. 412(e)(2), and therefore T.P.'s later retraction of her statement – that H.P. did not stop spraying when asked – placed the evidence under the purview of I.R.E. 412(b)(2)(C) as a prior false allegation of a sex crime. The district court agreed with defense counsel that the shower spraying incident theoretically constituted a "sex crime," but noted that it was a "real stretch." However, after determining the evidence's probative value was "about zip" for I.R.E. 412 purposes, the district court held that the probative value was outweighed by the danger of allowing extraneous issues to come before the jury. The court also concluded that the jury's consideration of the evidence would be a waste of trial time. As such, the district court excluded the evidence under I.R.E. 412.

Defense counsel also sought to introduce this evidence under I.R.E. 613 to impeach the foster mother's testimony. Defense counsel argued that evidence demonstrating T.P. had made a prior false allegation of a sex crime against H.P., and the foster mother's documented concern that T.P. had lied or exaggerated about the shower spraying incident, was inconsistent with her trial testimony that T.P. had only lied about "normal kid stuff."[1] Although the district court acknowledged that the prosecutor had impermissibly opened the door to this line of questioning, the court also determined further evidence on the issue would be unhelpful to the jury and would waste trial time. Accordingly, the district court held the evidence inadmissible under I.R.E. 403.

Later, the prosecutor called the foster father to testify. This time, defense counsel initiated questioning about the girls' truthfulness during cross-examination. However, on redirect, the prosecutor continued with her theme of eliciting vouching testimony by asking the

---

[1] The foster mother's concern was documented in the Department's Narrative Summary Report, which detailed the reporting and investigation of the 2004 incident between T.P. and H.P.

foster father if he noticed any signs of dishonesty on the girls' faces when they told him what had happened with Perry, to which the foster father replied "no." Defense counsel neither objected to the prosecutor's line of questioning, nor did he conduct re-cross-examination of the foster father.

Next, the prosecutor presented the testimony of Scott Teneyck, the investigating officer who interviewed T.P. and H.P. regarding their allegations against Perry. After the prosecutor asked a series of questions that established Teneyck's training and experience in interviewing children, and elicited testimony regarding the signs children typically give off during interviews which indicate that they are being untruthful, the prosecutor went on to inquire about Teneyck's interviews with T.P. and H.P. First, the prosecutor asked the Teneyck for his opinion as to whether T.P. was being truthful when she reported her allegations against Perry. Teneyck replied that he saw no indication of untruthfulness during his interview with T.P. When the prosecutor asked the same question regarding H.P., defense counsel objected before Teneyck could answer. The district court sustained the objection, noting that the prosecution was attempting to vouch for the girls' credibility and it was up to the jury to decide whether or not the girls were telling the truth.

Nevertheless, during closing argument the prosecutor referred to testimony from the foster mother, the foster father, and the officer that vouched for the girls' credibility. On four separate occasions, either directly or indirectly, the prosecutor reiterated that these witnesses believed the girls' allegations. Once again, defense counsel did not object to any of the prosecutor's statements.

The jury found Perry guilty of two counts of sexual abuse of a child under sixteen years of age, for acts against T.P., and two counts of misdemeanor battery, for acts against H.P. The district court sentenced Perry to two concurrent fifteen-year terms, with five years determinate, for the two counts of sexual abuse, and two concurrent 180-day terms for the two counts of battery. Perry appealed and the Court of Appeals affirmed his conviction. This Court granted Perry's Petition for Review.

## II. STANDARD OF REVIEW

"On review of a case from the Court of Appeals, this Court gives due consideration to the Court of Appeals' decision, but directly reviews the decision of the trial court." *State v.*

4

*Clements*, 148 Idaho 82, __, 218 P.3d 1143, 1145 (2009) (quoting *State v. Bishop*, 146 Idaho 804, 810, 203 P.3d 1203, 1209 (2009)).

### III. DISCUSSION

**A. Prior False Allegation of a Sex Crime under I.R.E. 412**

Perry argues that the district court abused its discretion in excluding evidence that T.P. made a prior false allegation of a sex crime against H.P. under I.R.E. 412 to impeach T.P.'s accusations against Perry. We agree with the district court's determination that Perry's proffer of I.R.E. 412 evidence was limited to the shower spraying incident between the girls, but disagree with the district court's interpretation that the incident constituted a "sex crime" under I.R.E. 412(e)(3). We affirm the district court's exclusion of the evidence.

1. The district court did not abuse its discretion in limiting the I.R.E. 412 evidence to the shower spraying incident between T.P. and H.P.

At the onset, we must address Perry's claim that the district erred in limiting its ruling on the admissibility of the I.R.E. 412 evidence to the shower spraying incident between the girls. Perry argues that it is clear from his I.R.E. 412 notice that he also sought to introduce evidence that T.P. had falsely accused H.P. of touching her breasts in 2004. Specifically, Perry directs us to the Department's Narrative Summary Report attached to his I.R.E. 412 motion, which details the reporting and investigation of T.P.'s allegations against H.P. The report states that, in 2004, T.P. accused H.P. of spraying T.P.'s genitals with a shower head and grabbing T.P.'s "boobies" twice during a family camping trip. The report later contains an entry documenting the foster mother's concern that T.P. either embellished or lied about the incident. Perry argues that these two entries read together demonstrate that T.P. lied about H.P. touching her breasts.

The admissibility of I.R.E. 412 evidence is determined solely from the basis of the I.R.E. 412 hearing. *See* I.R.E. 412(c)(2)-(3). Under I.R.E. 412, evidence of a victim's past sexual behavior is generally inadmissible. I.R.E. 412(a)-(b). A defendant seeking to introduce evidence regarding a sex-crime victim's past sexual behavior is required to submit a written offer of proof from which the trial court determines if that evidence falls within the limited exceptions for admissibility. I.R.E. 412(c)(2). In other words, the trial court determines whether it will even consider the admissibility of the evidence based upon the written offer of proof. If the trial court determines that an I.R.E. 412 hearing is warranted, the evidence's admissibility is determined from the basis of that hearing alone. I.R.E. 412(c)(3). Perry cannot now rely on any other

supposed "false allegations" contained in his I.R.E. 412 notice that defense counsel did not also include in his argument during the I.R.E. 412 hearing.

Upon review of the I.R.E. 412 hearing transcript, it is clear that evidence of T.P.'s prior false allegation was limited to the shower spraying incident. There was no evidence presented at the hearing that T.P. lied about H.P. touching her breasts twice during the 2004 camping trip. In fact, defense counsel quickly pulled the district court's attention away from this allegation and instead focused the court's attention on the shower spraying incident.[2] Furthermore, when the district court asked if the "false allegation" was whether H.P. stopped spraying when T.P. protested, defense counsel stood by and said nothing. If this was not the only false allegation defense counsel sought to present, he should have corrected the court at that time. Thus, from the proceedings of the I.R.E. 412 hearing, we agree with the district court that Perry's proffer of evidence regarding T.P.'s prior false allegation of a sex crime against H.P. was limited to the shower spraying incident and whether H.P. stopped spraying when T.P. protested.

2.  The shower spraying incident between T.P. and H.P. did not constitute a "sex crime" under I.R.E. 412(e)(2).

Although neither side raises the issue on appeal, we exercise free review over whether the shower spraying incident between the girls constituted a false allegation of a "sex crime" under I.R.E. 412(b)(2)(C). In order to present evidence of a false allegation of a "sex crime" as the term is defined under I.R.E. 412(e)(2), the defendant must first identify a separate crime under Idaho law that the incident falls under. Here, defense counsel failed to specifically identify the underlying crime. Instead, defense counsel read the definition of "sex crime" under I.R.E. 412(e)(2) verbatim. Defense counsel explained that the rule requires that the alleged sex crime fall under a separate crime in Idaho, and then went on to say that H.P. made contact with T.P.'s genitals, both in front and back, without her consent. Although defense counsel never specifically stated that the underlying crime was battery, the district court determined that "theoretically" the shower spraying incident could constitute a battery that involved the genitals of another person. Because the district court was able to discern that the underlying crime was battery, we find that defense counsel in essence laid the proper foundation for the proffer of I.R.E. 412 evidence.

_____

[2] At the onset of the I.R.E. 412 hearing, after reading T.P.'s allegations against H.P. contained in the Department of Health and Welfare Narrative Summary Report, defense counsel stated: "But the main incident that we're dealing with on that I would like to inquire about is the incident with the shower head."

6

However, despite that proper foundation, the shower spraying incident between H.P. and T.P. clearly did not constitute a "sex crime." As originally adopted in 1985, I.R.E. 412 did not include the term "sex crime." "Sex crime" was added in 1986 and defined as "rape, attempted rape, assault with the intent to commit rape or the infamous crime against nature, battery with the intent to commit rape or the infamous crime against nature, or kidnapping for the purpose of committing rape or the infamous crime against nature." I.R.E. 412(e)(2) (1986). This definition was amended in 1997 after the Evidence Rules Committee determined that the original definition of "sex crime" did not encompass many of the more modern sexual abuse crimes defendants were being charged with. *Agenda for the 1996 Annual Meeting of the Evidence Rules Comm.* at 1. As part of the amendment the committee added the "catchall" provision of I.R.E. 412(e)(2), which defines "sex crime" as "any other crime under the law of the state of Idaho that involved; contact, without consent, between any part of the defendant's body or an object and the genitals or anus of another person; or contact, without consent, between the genitals or anus of the defendant and any part of another person's body." I.R.E. 412(e)(2). This language was taken from Rule 413 of the Federal Rule of Evidence which governs the admissibility of evidence of similar crimes in federal sexual assault cases. *See Agenda for the 1996 Annual Meeting of the Evidence Rules Comm.* at 2. Federal Rule of Evidence 413(a) reads: "In a criminal case in which the *defendant* is accused of an offense of sexual assault, evidence of the *defendant's* commission of another offense or offenses of sexual assault is admissible, and may be considered for its bearing on any matter to which it is relevant." (Emphasis added). For purposes of F.R.E. 413, "offense of sexual assault" is defined as "a crime under federal law or the law of a state that involved . . . contact, without consent, between any part of the *defendant*'s body or an object and the genitals or anus of another person." F.R.E. 413(d)(2) (emphasis added). Thus, the word "defendant" in F.R.E. 413(d)(2)—the provision that I.R.E. 412(e)(2) mirrors—refers to the defendant charged with the underlying offense.

Based on the history of I.R.E. 412(e)(2) listed above, we hold that the shower spraying incident between T.P. and H.P. does not fall within the definition of "sex crime." In order to constitute a "sex crime," the contact must involve either the body of, or an object held by the defendant charged with the underlying offense and the genitals or anus of another person. *See* I.R.E. 412(e)(2). Because Perry – and not H.P. – is the defendant charged with the underlying sex crime in this case, the shower spraying incident between T.P. and H.P. does not fall within

the definition of "sex crime" under I.R.E. 412(e)(2). As such, we need not determine whether T.P.'s partial retraction of her allegations against H.P. constituted a "false allegation" under I.R.E. 412(b)(2)(C).

> 3. The district court did not abuse its discretion in excluding Perry from offering evidence of T.P.'s alleged false allegation regarding the shower spraying incident in order to impeach T.P.'s accusations against Perry.

Perry contends that the district court abused its discretion by failing to give enough weight to the evidence of T.P.'s prior false allegation of a sex crime against H.P. We disagree.

The trial court's judgment concerning admission of evidence shall "only be disturbed on appeal when there has been a clear abuse of discretion." *State v. Gleason*, 123 Idaho 62, 65, 844 P.2d 691, 694 (1992). *See also State v. Watkins,* 148 Idaho 418, __, 224 P.3d 485, 488 (2009). In determining whether a trial court has abused its discretion, the sequence of inquiry is:

> (1) [W]hether the trial court correctly perceived the issue as one of discretion; (2) whether the trial court acted within the outer boundaries of its discretion and consistently with the legal standards applicable to the specific choices available to it; and (3) whether the trial court reached its decision by an exercise of reason.

*Hall v. Farmers Alliance Mut. Ins. Co.*, 145 Idaho 313, 319, 179 P.3d 276, 282 (2008) (quoting *Sun Valley Shopping Ctr., Inc. v. Idaho Power Co.,* 119 Idaho 87, 94, 803 P.2d 993, 1000 (1991)).

Although the district court erred in evaluating the evidence of the shower spraying incident under I.R.E. 412, the court nevertheless excluded the evidence under the appropriate balancing test. Evidence of a victim's past sexual behavior, if relevant, is subject to the I.R.E. 412(c)(3) balancing test, which requires that the probative value of such evidence outweigh the danger of unfair prejudice. I.R.E. 412(c)(3). As set forth above, the shower spraying incident does not fall under I.R.E. 412 and, therefore, is not subject to the I.R.E. 412(c) balancing test. Instead the evidence is subject to the I.R.E. 403 balancing test, which provides: "[E]vidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." During the I.R.E. 412 hearing, the district court stated:

> As I say – well, all right, maybe theoretically it comes within the definition of sex crime, but its probative value to me is, at least for 412 purposes, is so slim that letting it in would be –I know they're talking about unfair – the danger of unfair prejudice. I think that they probably ought to have said there's also the danger of

getting a lot of extraneous issues before the jury that are a waste of their time and not going to be helpful to them in deciding what is the guilt or innocence of the defendant. So, under – to let it under 412, I'd say no.

We note that I.R.E. 412 was irrelevant to the district court's decision since the shower spraying incident was not a "sex crime." However, in weighing the evidence, the court considered factors outside of the I.R.E. 412 balancing test, such as the danger of introducing extraneous issues that would be unhelpful to the jury and the danger of wasting trial time. As such, we find that the Court effectively conducted an I.R.E. 403 analysis, which was the appropriate test for the evidence.

We therefore hold that the district court did not abuse its discretion by excluding Perry from offering evidence of T.P.'s alleged false allegations regarding the shower spraying incident to impeach T.P.'s allegations against Perry under I.R.E. 403. The proposed evidence regarding the shower spraying incident had minimal probative value, if any. Accordingly, we affirm the exclusion of the evidence as a proper exercise of the court's discretion.

## B. Impeachment by Prior Inconsistent Statement under I.R.E. 613

Perry also asserts that the district court abused its discretion by excluding evidence of T.P.'s prior false allegations against H.P. from the 2004 camping trip to impeach the foster mother's testimony under I.R.E. 613. We disagree.

To be admissible for impeachment purposes evidence of a witness's prior inconsistent statement must be relevant to the witness's trial testimony. *See* I.R.E. 401. As previously established, the evidence was limited to the shower spraying incident and whether H.P. stopped spraying T.P. when asked. Again, this was not evidence of a "sex crime," but rather inconsequential information concerning children engaging in horseplay, and their subsequent dispute. Although the foster mother may have believed that T.P. either lied or exaggerated about this *minor incident*, this entry is not inconsistent with her trial testimony that the girls had never lied about *anything of significance*. The district court was well within its discretion in holding that the marginal probative value contained in the evidence surrounding this childish dispute was substantially outweighed by the danger of confusing or misleading the jury with extraneous issues and wasting trial time. As such, we affirm the district court's ruling to exclude the evidence.

9

## C. Prosecutorial Misconduct

On appeal Perry argues that the prosecutor committed five acts of misconduct during the course of the judicial proceedings; however, Perry only objected to one of these alleged acts of prosecutorial misconduct. Perry argues that each act of misconduct not followed by a contemporaneous objection constitutes fundamental error, and that none of the acts, whether objected to or not, are harmless.

In *State v. Field*, we stated our standard of review for claims of prosecutorial misconduct:

> When there has been a contemporaneous objection we determine factually if there was prosecutorial misconduct, then we determine whether the error was harmless. When there is no contemporaneous objection a conviction will be reversed for prosecutorial misconduct only if the conduct is sufficiently egregious so as to result in fundamental error. However, even when prosecutorial misconduct has resulted in fundamental error, the conviction will not be reversed when that error is harmless.

144 Idaho 559, 571, 165 P.3d 273, 285 (2007) (internal citations omitted). Thus, for alleged acts of prosecutorial misconduct followed by a contemporaneous objection, courts have engaged in a two-step analysis, determining: (1) whether misconduct occurred; and (2) whether the misconduct was harmless. When the alleged acts of prosecutorial misconduct were not objected to at trial the appellate court engaged in a three-step analysis, determining: (1) whether misconduct occurred; (2) whether the alleged misconduct rose to the level of fundamental error; and (3) whether the misconduct was harmless. *Id.*

### 1. Clarification Needed for Standards Employed in Idaho Appellate Review

Multiple statements of law pertaining to the fundamental error doctrine have caused confusion. We have identified three major problems with our standard of review that continue to plague the appellate courts of this state. First, the definition of fundamental error we adopted from the New Mexico Supreme Court is at odds with our precedent for constitutional claims. *See Smith v. State,* 94 Idaho 469, 475 n.13, 491 P.2d 733, 739 n.13 (1971); *but see State v. Kirkwood*, 111 Idaho 623, 626, 726 P.2d 735, 738 (1986). Second, Idaho appellate courts apply two different definitions of fundamental error to claims of prosecutorial misconduct, one definition for misconduct allegedly committed during closing argument, and another for misconduct allegedly committed at any other time during the judicial proceedings. *See, e.g.*, *State v. Spencer*, 74 Idaho 173, 183-84, 258 P.2d 1147, 1154 (1953); *State v. Ames*, 109 Idaho 373, 376, 707 P.2d 484, 487 (Ct. App. 1985); *but see State v. Christiansen*, 144 Idaho 463, 470,

10

163 P.3d 1175, 1182 (2007). Third, appellate courts also apply two different standards of review for harmless error depending upon whether the error complained of affects the trial in a more general sense, or whether the error complained of involves a discrete piece of evidence. *State v. LePage*, 102 Idaho 387, 396, 630 P.2d 674, 683 (1981).

We take this opportunity to clarify the standards employed by Idaho appellate courts in analyzing alleged trial errors for harmless error or fundamental error, so as to: (1) provide guidance to our Appellate Courts applying the doctrine; (2) promote judicial fairness and equal application of law by eliminating unnecessary ambiguities; (3) reinforce the judicial preference for contemporaneous objections before the trial court.

After thorough examination, we find no compelling reason why claims of prosecutorial misconduct should be treated any different than other errors occurring at trial. The standard of review that shall properly be applied to these errors is dependent upon two factors: (1) whether these errors were followed by a contemporaneous objection at trial, and, if not, (2) whether these errors constitute the violation of a constitutionally protected right.

In order to establish a clear standard going forward, we begin with an examination of the past, summarizing the origins of the harmless error doctrine, the subsequent development of the standard of review employed for errors impinging upon constitutionally protected rights, and finally, federal plain error and its relationship with Idaho's doctrine of fundamental error.

### i. Harmless Error

Prior to the early twentieth century the doctrine of harmless error did not exist, and where error was found to have occurred at trial, a reversal was necessitated in all cases. *Kotteakos v. United States*, 328 U.S. 750, 759 (1946) ("So great was the threat of reversal, in many jurisdictions, that criminal trial became a game of sowing reversible error in the record, only to have repeated the same matching of wits when a new trial had been thus obtained.") In a footnote in *Kotteakos*, 328 U.S. at 760 n. 14, the Court cited the Missouri Supreme Court's opinion in *State v. Campbell*, 109 S.W. 706 (Mo. 1908), to highlight the problem of reversals on purely technical violations that necessitated the creation of harmless error review. In *Campbell*, the Missouri Supreme Court reversed a rape conviction because the indictment incorrectly listed the charged offense as "against the peace and dignity of state" rather than the correct charge of "against the peace and dignity of *the* state." 109 S.W. at 711 (emphasis added). Harmless error review was created to prevent such miscarriages of justice, and to prevent trial verdicts from

being reversed on mere technical violations that did not affect the ultimate disposition of the case. As the court in *Kotteakos* explained:

> [In developing the doctrine of harmless error, t]he general object was simple, to substitute judgment for automatic application of rules; to preserve review as a check upon arbitrary action and essential unfairness in trials, but at the same time to make the process perform that function without giving men fairly convicted the multiplicity of loopholes which any highly rigid and minutely detailed scheme of errors, especially in relation to procedure, will engender and reflect in a printed record.

328 U.S. at 759-60.

The original federal harmless error provision was enacted in 1919, in section 269 of the Judicial Code, directing appellate courts to ignore "technical errors, defects, or exceptions which do not affect the substantial rights of the parties." Act of Feb. 26, 1919, ch. 48, 40 Stat. 1181 (repealed 1948). [3] Determining which errors "affect the substantial rights of the parties" became key, and in *Kotteakos*, the Court offered the following: "If, when all is said and done, the [Court] is sure that the error did not influence the jury, or had but very slight effect, the verdict and the judgment should stand, except perhaps where the departure is from a constitutional norm or a specific command of Congress." 328 U.S. at 764-65. Thus, in the aftermath of *Kotteakos*, it was unclear whether or not harmless error analysis could be applied to an error which infringed upon a constitutionally protected right. This uncertainty was resolved by the U.S. Supreme Court in *Chapman v. California*, 386 U.S. 18 (1967), where the Court found that most errors amounting to constitutional violations could be subject to a form of harmless error analysis, but under a higher standard of review than that provided under *Kotteakos*.

### ii. Chapman Harmless Error

In *Chapman*, the Court found that although State harmless error rules applied to violations of state procedural or substantive law, the U.S. Supreme Court's standards govern where the violation of a constitutionally-protected right occurs. *Id.* at 21 ("[W]e cannot leave to the States the formulation of the authoritative laws, rules, and remedies designed to protect people from infractions by the States of federally guaranteed rights. . . . [Absent] appropriate congressional action, it is our responsibility to protect [constitutional rights] by fashioning the

---

[3] Currently harmless error review is governed by rules of procedure at the state and federal level. Federal Rule of Criminal Procedure 52 (a) states, "Harmless Error. Any error, defect, irregularity or variance which does not affect substantial rights must be disregarded." Idaho Criminal Rule 52 contains identical language. (Harmless error review is also provided for in Idaho Rule of Civil Procedure 61.)

necessary rule."). The Court determined that where a defendant is deprived of a constitutionally protected right at trial, automatic reversal is not always necessary; rather a heightened form of harmless error analysis will apply. *Id*. at 21. So, although "some constitutional rights [are] so basic to a fair trial that their infraction can never be treated as harmless error,"[4] most constitutional violations would be subject to the heightened harmless error review of constitutional harmless error analysis. *Id.* at 23-24. Under the *Chapman* harmless error analysis, where a constitutional violation occurs at trial, and is followed by a contemporaneous objection, a reversal is necessitated, *unless* the State proves "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Id.* at 24.

In Idaho, the harmless error test established in *Chapman* is now applied to all objected-to error. *See State v. Thompson*, 132 Idaho 628, 636, 977 P.2d 890, 898 (1999) (applying *Chapman* to an error in refusing to redact a portion of an admitted psychiatric report which this Court found to be of no probative value, and highly prejudicial); *State v. Johnson*, 148 Idaho 664, __, 227 P.3d 918, 923 (2010) (applying *Chapman* to an error in admitting evidence about the defendant's prior sexual misconduct). It is true that some opinions issued after *Chapman* have employed pre-*Chapman* phraseology when providing the applicable standard. *See State v. Zichko*, 129 Idaho 259, 265, 923 P.2d 966, 972 (1996) ("'Where the evidence of the defendant's guilt is proven and is such as ordinarily produces moral certainty or conviction in an unprejudiced mind, and the result would not have been different had an error in the trial not been committed, the judgment of conviction will not be reversed.'" (*quoting State v. Pizzuto*, 119 Idaho 742, 778, 810 P.2d 680, 716 (1991))). *See also, e.g., State v. Stoddard*, 105 Idaho 169, 171, 667 P.2d 272, 274 (Ct. App. 1983). However, we find that the standard employed by this alternative phraseology is so similar analytically to the standard employed under *Chapman*, that there is no practical difference. In order to avoid confusion and promote equal application of the law, Idaho shall from this point forward employ the *Chapman* harmless error test to all objected-

---

4     [T]here may be some constitutional errors which in the setting of a particular case are so unimportant and insignificant that they may, consistent with the Federal Constitution, be deemed harmless, not requiring the automatic reversal of the conviction. . . . "The question is whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction." Although our prior cases have indicated that there are some constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error, this statement in *Fahy* itself belies any belief that all trial errors which violate the Constitution automatically call for reversal.

*Chapman v. California*, 386 U.S. 18, 22 (1967) (quoting *Fahy v. Connecticut*, 375 U.S. 85, 86-87 (1963)).

to error.  A defendant appealing from an objected-to, non-constitutionally-based error shall have the duty to establish that such an error occurred, at which point the State shall have the burden of demonstrating that the error is harmless beyond a reasonable doubt.

Three important questions remained after *Chapman*.  First, how were courts to determine when violations of constitutionally protected rights were so egregious that they would necessitate an automatic reversal, not subject to harmless error analysis?  Second, could an error in jury instructions ever be considered harmless under the *Chapman* analysis?  Third, what review, if any, would be provided for violations of constitutionally-protected rights that were not followed by a contemporaneous objection at trial?

### a.  Trial Error/Structural Defect Distinction

In *Arizona v. Fulminante*, 499 U.S. 279 (1991), the Court elaborated on its statements in *Chapman* that some constitutional rights are so basic to a fair trial that the violation of those rights requires an automatic reversal and is not subject to harmless error analysis.   Chief Justice Rehnquist, writing for the majority on the issue, noted that constitutional error could essentially be broken down to two different categories: 1) trial errors "which [occur] during the presentation of the case to the jury, and which may therefore be quantitatively assessed in the context of other evidence presented in order to determine whether [their] admission was harmless beyond a reasonable doubt;" and 2) structural defects which affect "the framework within which the trial proceeds, rather than simply an error in the trial process itself" and thus are so inherently unfair that they are not subject to harmless error analysis.  *Id.* at 307-308, 310.  Explaining why certain constitutional violations amount to structural defects, the U.S. Supreme Court noted that "'[w]ithout these basic protections, a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence, and no criminal punishment may be regarded as fundamentally fair.'"  *Id.* at 310 (quoting *Rose v. Clark*, 478 U.S. 570, 577-78 (1986)).  *See also U.S. v. Gonzalez-Lopez*, 548 U.S. 140, 148 (2006) ("[Structural defects] 'defy analysis by harmless-error standards' because they 'affect the framework within which the trial proceeds,' and are not 'simply an error in the trial process itself.'" (quoting *Fulminante*, 499 U.S. at 309-10)).

The U.S. Supreme Court has found that the following errors constitute structural defects: (1) complete denial of counsel (*Gideon v. Wainwright*, 372 U.S. 335 (1963)); (2) biased trial judge (*Tumey v. Ohio*, 273 U.S. 510 (1927)); (3) racial discrimination in the selection of a grand

jury (*Vasquez v. Hillery*, 474 U.S. 254 (1986)); (4) denial of self-representation at trial (*McKaskle v. Wiggins*, 465 U.S. 168 (1984)); (5) denial of a public trial (*Waller v. Georgia*, 467 U.S. 39 (1984)); (6) defective reasonable-doubt instruction (*Sullivan v. Louisiana*, 508 U.S. 275 (1993)); and (7) erroneous deprivation of the right to counsel of choice (*U.S. v. Gonzalez-Lopez*, 548 U.S. 140 (2006)). Although there may be other constitutional violations that would so affect the core of the trial process that they require an automatic reversal, as a general rule, most constitutional violations will be subject to harmless error analysis. *Neder v. U.S.*, 527 U.S. 1, 8 (1999). ("'[I]f the defendant had counsel and was tried by an impartial adjudicator, there is a strong presumption that any other [constitutional] errors that may have occurred are subject to harmless-error analysis.'" (quoting *Rose v. Clark*, 478 U.S. 570, 579 (1986) (alterations in the original)).

### b. Instructional Error

In *Chapman*, the U.S. Supreme Court noted that the State of California's harmless-error analysis was flawed, as applied to constitutional errors, due to its over-reliance on the "overwhelming evidence" standard. 386 U.S. 18, 23 (1967). The Court held that the correct standard required appellate courts to ask "'whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction.'" *Id*. at 23 (quoting *Fahy v. Connecticut*, 375 U.S. 85, 86-87 (1963)). Following *Chapman* and *Fulminante*, it was unclear whether error in jury instructions would always be considered structural error or, if not, whether, without invading the province of the jury, an appellate court could find such an error harmless, due to the difficulty of analyzing such an error under the *Chapman* reasonable possibility standard.

In *Sullivan v. Louisiana*, 508 U.S. 275 (1993), the jury was given a defective "reasonable doubt" instruction, and the U.S. Supreme Court found that Sullivan's Sixth Amendment right to a jury trial had, therefore, been violated. The Court found that such violation constituted a structural defect, as it "vitiate[d] *all* the jury's findings" such that it would be improper for the Court to speculate on what the jury would have done if they had been provided with an adequate reasonable doubt instruction, therefore necessitating an automatic reversal. *Id*. at 281. The Court stated that without a valid verdict, based upon an accurate reasonable doubt instruction, "the question whether the *same* verdict of guilty-beyond-a-reasonable-doubt would have been rendered absent the constitutional error is utterly meaningless. There is no *object*, so to speak,

15

upon which the harmless-error scrutiny can operate." *Id.* at 280. The Court concluded, "the inquiry, in other words, is not whether, in a trial that occurred without the error, a guilty verdict would have been rendered, but whether the guilty verdict actually rendered in *this* trial was surely unattributable to the error." *Id.* at 279. It appeared, after *Sullivan*, that an error in jury instructions would likely be considered a structural defect.

In *Neder v. U.S.*, 527 U.S. 1 (1999), the Court backed away from the cut-and-dry rule established in *Sullivan*. In *Neder* the jury instructions omitted an element of one of the offenses being charged, preventing the jury from making a determination as to that element, but the Court nevertheless held that the constitutional violation was subject to harmless error review. *Id.* The Court held that "where a reviewing court concludes beyond a reasonable doubt that the omitted element was uncontested and supported by overwhelming evidence, such that the jury verdict would have been the same absent the error, the erroneous instruction is properly found to be harmless." *Id.* at 17. In rejecting automatic reversal for all errors that "infringe upon the jury's fact-finding role and affect the jury's deliberative process in ways that are, strictly speaking, not readily calculable," the Court held that the essential inquiry is whether it is "clear beyond a reasonable doubt that a *rational* jury would have found the defendant guilty absent the error." *Id.* at 18 (emphasis added).

In a strongly-worded dissent Justice Scalia, joined by Justices Souter and Ginsburg, condemned the majority's ruling:

> The Court's decision today is the only instance I know of (or could conceive of) in which the remedy for a constitutional violation by a trial judge (making the determination of criminal guilt reserved to the jury) is a repetition of the same constitutional violation by the appellate court (making the determination of criminal guilt reserved to the jury).

*Id.* at 32 (Scalia, J. dissenting in part and dissenting in judgment). The majority was not entirely insensitive to this concern, but stated that, ultimately, "[w]e believe that where an omitted element is supported by uncontroverted evidence, this approach reaches an appropriate balance between 'society's interest in punishing the guilty [and] the method by which decisions of guilt are to be made.'" *Id.* at 18 (quoting *Connecticut v. Johnson*, 460 U.S. 73, 86 (1983) (plurality opinion)). The majority went on to note that if the element in question had been contested, and competing evidence sufficient to support a contrary finding on the omitted element had been offered, then the Court could not have found the constitutional violation harmless beyond a reasonable doubt and would have reversed. *Id.* at 19.

Taking *Sullivan* and *Neder* together, in instances where erroneous jury instructions were provided at trial, an appellate court must first determine whether an improper jury instruction affected the entire deliberative process. If it did, then a reversal is necessary as the jury's deliberations were fundamentally flawed, and any attempted harmless error inquiry would essentially result in the appellate court itself acting in the role of jury. However, where the jury instructions were only partially erroneous, such as where the jury instructions improperly omitted one element of a charged offense, the appellate court may apply the harmless error test, and where the evidence supporting a finding on the omitted element is overwhelming and uncontroverted, so that no rational jury could have found that the state failed to prove that element, the constitutional violation may be deemed harmless.

### iii. Review Provided for Fundamental Error/Plain Error

Generally Idaho's appellate courts will not consider error not preserved for appeal through an objection at trial. *State v. Johnson*, 126 Idaho 892, 896, 894 P.2d 125, 129 (1995). "This limitation on appellate-court authority serves to induce the timely raising of claims and objections, which gives the [trial] court the opportunity to consider and resolve them." *Puckett v. U.S.*, 129 S.Ct. 1423, 1428 (2009). Ordinarily, the trial court is in the best position to determine the relevant facts and to adjudicate the dispute. *Id.* "In the case of an actual or invited procedural error, the [trial] court can often correct or avoid the mistake so that it cannot possibly affect the ultimate outcome." *Id.* Furthermore, requiring a contemporaneous objection prevents the litigant from sandbagging the court, i.e., "remaining silent about his objection and belatedly raising the error only if the case does not conclude in his favor." *Id.* However, every defendant has a Fourteenth Amendment right to due process and "[i]t is axiomatic that '[a] fair trial in a fair tribunal is a basic requirement of due process.'" *Caperton v. A.T. Massey Coal Co., Inc.*, 129 S. Ct. 2252, 2259 (2009) (quoting *In re Murchison*, 349 U.S. 133, 136 (1955)). Accordingly, when an error has not been properly preserved for appeal through objection at trial, the appellate court's authority to remedy that error is strictly circumscribed to cases where the error results in the defendant being deprived of his or her Fourteenth Amendment due process right to a fair trial in a fair tribunal. *See State v. Field*, 144 Idaho 559, 571, 165 P.3d 273, 285 (2007).

The U.S. Supreme Court has never held that the U.S. Constitution requires state courts to provide appellate review for instances of unobjected to violations of constitutionally protected rights. Nevertheless we choose to consider the U.S. Supreme Court's application of the

statutorily-derived plain error review and how it compares with Idaho's traditional fundamental error review.

The federal courts, like Idaho, follow the procedural principle that an issue raised for the first time on appeal will not be considered on appeal. However, Federal Rule of Criminal Procedure 52(b) provides federal appellate courts with limited power to correct errors even in the absence of a timely objection before the trial court. Federal Rule of Criminal Procedure 52(b) states: "A plain error that affects substantial rights may be considered even though it was not brought to the court's attention." In applying plain error review the U.S. Supreme Court has recognized the strong societal interest in finality of judgments, and the associated incentive that must be given for defendants to properly object before a trial court, as that body is best suited to deal with potential error at trial, before a verdict has been reached. *See Puckett v. U.S.*, 129 S.Ct. 1423 (2009). However, the Court has also recognized that this public policy must be balanced with the sense of fundamental justice inherent in the concept of a fair trial. *See id.*

Based upon this framework the U.S. Supreme Court devised a three-prong threshold inquiry for determining when appellate courts should reverse on the grounds of unobjected to error. *U.S. v. Olano*, 507 U.S. 725, 732-35 (1993). First, the defendant must have had one of his rights violated, a right which he did not waive. *Id.* at 732-33 ("Waiver is different from forfeiture. Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the 'intentional relinquishment or abandonment of a known right.'" (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938))). Second, the error must be "plain" which "is synonymous with 'clear' or, equivalently, 'obvious.'" *Id.* at 734. Third, the error must affect substantial rights, meaning (in most instances) that it must have affected the outcome of the trial court proceedings. *Id.* This third prong is equivalent to the analysis applied in *Chapman* harmless error review, with one important difference. In harmless error review the burden of persuasion is on the State to demonstrate that the constitutional violation did not affect the outcome of the case. In plain error review the burden is upon the defendant to demonstrate that the error *did* affect the outcome. As stated by the U.S. Supreme Court:

> When the defendant has made a timely objection to an error and Rule 52(a) applies, a court of appeals normally engages in a specific analysis of the district court record - a so-called "harmless error" inquiry - to determine whether the error was prejudicial. Rule 52(b) normally requires the same kind of inquiry, with one important difference: It is the defendant rather than the Government who bears the burden of persuasion with respect to prejudice. In most cases, a court of

18

> appeals cannot correct the forfeited error unless the defendant shows that the error was prejudicial. This burden shifting is dictated by a subtle but important difference in language between the two parts of Rule 52: While Rule 52(a) precludes error correction only if the error "does *not* affect substantial rights," . . . Rule 52(b) authorizes no remedy unless the error *does* "affec[t] substantial rights."

*Id.* at 734-35 (citations omitted). The reason the parenthetical - (in most instances) - was inserted into the third prong above is because the U.S. Supreme Court in *Olano* declined to determine whether unobjected to constitutional violations rising to the level of structural defects will satisfy the "affect substantial rights" prong without a showing of actual affect on the outcome of the case. *Id*. at 735. *See also Puckett v. U.S.*, 129 S.Ct. 1423, 1432 (2009). Finally, the U.S. Supreme Court in *Olano* held that even where the defendant has met his burden under the three-prong threshold test, an appellate court should still only reverse where the error "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Id*. at 736 (alteration in the original) (internal quotation omitted).

Although the Idaho Rules of Criminal Procedure do not contain the equivalent of Rule 52(b), Idaho Rule of Evidence 103(d) does state that nothing under the rules shall preclude an appellate court from "taking notice of plain errors affecting substantial rights." We have long held that instances of unobjected to fundamental error would be subject to review on appeal. *State v. Haggard*, 94 Idaho 249, 251, 486 P.2d 260, 262 (1971) ("In case of fundamental error in a criminal case the Supreme Court may consider the [error] even though no objection had been made at time of trial."). Where the federal courts employ the plain error doctrine, Idaho courts employ the fundamental error doctrine.

Idaho has limited appellate review of unobjected-to error to cases wherein the defendant has alleged the violation of a constitutionally protected right. *State v. Kirkwood*, 111 Idaho 623, 625-26, 726 P.2d 735, 737-38 (1986). We have stated that "where . . . the asserted error relates not to infringement upon a constitutional right, but to violation of a rule or statute . . . the 'fundamental error' doctrine is not invoked." Id. at 626, 726 P.2d at 738 (quoting *State v. Kelly*, 106 Idaho 268, 277, 678 P.2d 60, 69 (Ct. App. 1984)). In other words, contrary to the federal plain error rule, in Idaho a trial error that does not violate one or more of the defendant's constitutionally protected rights is not subject to reversal under the fundamental error doctrine. *See State v. Anderson*, 144 Idaho 743, 749, 170 P.3d 886, 892 (2007).

The State of Idaho shares the same conflicting interests as the federal government when it comes to review of unobjected to error, and we find that the U.S. Supreme Court struck an appropriate balance between these competing interests in their opinion in *Olano*. Idaho's previous articulation of fundamental error failed to provide appellate courts with a structured inquiry likely to lend itself to equal application. Therefore, after careful and considered analysis, we hold that in cases of unobjected to fundamental error: (1) the defendant must demonstrate that one or more of the defendant's unwaived constitutional rights were violated; (2) the error must be clear or obvious, without the need for any additional information not contained in the appellate record, including information as to whether the failure to object was a tactical decision[5]; and (3) the defendant must demonstrate that the error affected the defendant's substantial rights, meaning (in most instances) that it must have affected the outcome of the trial proceedings. If there is insufficient evidence in the appellate record to show clear error, the matter would be better handled in post-conviction proceedings. Placing the burden of demonstrating harm on the defendant will encourage the making of timely objections that could result in the error being prevented or the harm being alleviated.

In summary, where an error has occurred at trial and was not followed by a contemporaneous objection, such error shall only be reviewed where the defendant demonstrates to an appellate court that one of his unwaived constitutional rights was plainly violated. If the defendant meets this burden then an appellate court shall review the error under the harmless error test, with the defendant bearing the burden of proving there is a reasonable possibility that the error affected the outcome of the trial.

In *Smith v. State,* 94 Idaho 469, 475 n.13, 491 P.2d 733, 739 n.13 (1971), we adopted the following definition of fundamental error from the New Mexico Supreme Court:

> Error that is fundamental must be such error as goes to the foundation or basis of a defendant's rights or must go to the foundation of the case or take from the defendant a right which was essential to his defense and which no court could or ought to permit him to waive. Each case will of necessity, under such a rule, stand on its own merits. Out of the facts in each case will arise the law.

---

[5] *See State v. Adams*, 147 Idaho 857, 216 P.3d 146 (Ct. App. 2009) (where defense counsel did not try to exclude a juror for cause, nor use a peremptory challenge to remove her, the trial court's failure to remove that juror for cause *sua sponte* could not constitute fundamental error as the record failed to demonstrate that the juror would be biased against the defendant, such that the failure to attempt to exclude that juror could not have been a strategic decision by the defense).

Although we have applied other definitions in the past,[6] this is the only definition that has been formally adopted by the Court. *See State v. Knowlton*, 123 Idaho 916, 918, 854 P.2d 259, 261 (1993) (reaffirming that the New Mexico definition of fundamental error was formally adopted by this Court in *Smith*). One problem with New Mexico's definition lies in the phrase "which no court could or ought to permit [the defendant] to waive." *Bingham,* 116 Idaho at 423, 776 P.2d at 432 (quoting *State v. Garcia*, 128 P.2d 459, 462 (N.M. 1942)). In Idaho, we permit a defendant to waive a right of constitutional magnitude, so long as the defendant does so knowingly, voluntarily, and intelligently. *See State v. Kirkwood,* 111 Idaho 623, 626, 726 P.2d 735, 738 (1986). Another problem with the New Mexico definition is that it makes fundamental error review an excessively ambiguous process, with only vague standards for appellate courts to follow. We take this opportunity to expressly disavow our definition of "fundamental error" as adopted in *Smith*.

### iv. Review for Claims of Prosecutorial Misconduct

We find no reason that claims of prosecutorial misconduct should be treated any differently from other trial errors.

### a. Objected to Prosecutorial Misconduct

Where a defendant demonstrates that prosecutorial misconduct has occurred, and such misconduct was followed by a contemporaneous objection by defense counsel, such error shall be reviewed for harmless error in accordance with *Chapman*.

### b. Unobjected to Prosecutorial Misconduct

Where prosecutorial misconduct was not objected to at trial, Idaho appellate courts may only order a reversal when the defendant demonstrates that the violation in question qualifies as fundamental error as outlined above. If the defendant fails to meet his burden then an appellate court may not reverse under the fundamental error doctrine.[7] If the prosecutorial misconduct is found to constitute fundamental error under the three-prong inquiry, then an appellate court shall vacate and remand. Where a prosecutor attempts to secure a verdict on any factor other than the

---

[6] "At other times, we have defined fundamental error as '[a]n error that goes to the foundation or basis of a defendant's rights,' *State v. Kenner,* 121 Idaho 594, 597, 826 P.2d 1306, 1309 (1992), and an 'error which so profoundly distorts the trial that it produces manifest injustice and deprives the accused of his constitutional right to due process,' *State v. Sheahan,* 139 Idaho 267, 281, 77 P.3d 956, 970 (2003) [(internal quotations omitted)]." *State v. Christiansen*, 144 Idaho 463, 470, 163 P.3d 1175, 1182 (2007).

[7] The defendant may still file a petition for post-conviction relief proceedings in order to ascertain whether defense counsel's failure to object to the alleged error constituted ineffective assistance of counsel.

21

law as set forth in the jury instructions and the evidence admitted during trial, including reasonable inferences that may be drawn from that evidence, this impacts a defendant's Fourteenth Amendment right to a fair trial.

### v. *Standard of Review Summary*

In summary, where a defendant alleges that an error occurred at trial, appellate courts in Idaho will engage in the following analysis:

(1) If the alleged error was followed by a contemporaneous objection at trial, appellate courts shall employ the harmless error test articulated in *Chapman*. Where the defendant meets his initial burden of showing that a violation occurred, the State then has the burden of demonstrating to the appellate court beyond a reasonable doubt that the constitutional violation did not contribute to the jury's verdict. There are two exceptions to this standard:

    a. Where the error in question is a constitutional violation found to constitute a structural defect, affecting the base structure of the trial to the point that a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence, the appellate court shall automatically vacate and remand.

    b. Where the jury reached its verdict based upon erroneous instruction an appellate court shall generally vacate and remand the decision of the lower court. However, in the limited instance where the jury received proper instruction on all but one element of an offense, and "[w]here a reviewing court concludes beyond a reasonable doubt that the omitted element was uncontested and supported by overwhelming evidence, such that the jury verdict would have been the same absent the error, the erroneous instruction is properly found to be harmless." *State v. Lovelace*, 140 Idaho 73, 79, 90 P.3d 298, 304 (2004). If a rational jury could have found that the state failed to prove the omitted element then the appellate court shall vacate and remand.

(2) If the alleged error was not followed by a contemporaneous objection, it shall only be reviewed by an appellate court under Idaho's fundamental error doctrine. Such review includes a three-prong inquiry wherein the defendant bears the burden of persuading the appellate court that the alleged error: (1) violates one or more of the defendant's unwaived constitutional rights; (2) plainly exists (without the need for any additional information not contained in the appellate record, including information as to whether the failure to object was a tactical decision); and (3) was not harmless. If the defendant persuades the appellate court that the complained of error satisfies this three-prong inquiry, then the appellate court shall vacate and remand.

We find that this analytical approach clarifies our standard of review while adhering to the historic principles underlying Idaho's harmless error and fundamental error doctrines. In

*Rhoades v. State*, this Court expressly adopted the *Teague*[8] standard for determining when a newly announced rule shall be applied retroactively in criminal cases. 149 Idaho 130, __, 233 P.3d 61, 70 (2010). As this opinion announces no new rule of law, but is only a clarification of our existing standards, *Teague* analysis is inapplicable, and these clarified standards shall be applied to all cases not yet final on direct review.

### 2. As Applied Here

Perry's claims of prosecutorial misconduct raised by Perry on appeal fail to demonstrate a clear violation of an unwaived constitutional right. As stated above, "where . . . the asserted error relates not to infringement upon a constitutional right, but to violation of a rule or statute, . . . the 'fundamental error' doctrine is not invoked." *State v. Kirkwood*, 111 Idaho 623, 626, 726 P.2d 735, 738 (1986) (quoting *State v. Kelly*, 106 Idaho 268, 277, 678 P.2d 60, 69 (Ct. App. 1984)). Here Perry alleges that the prosecutor committed misconduct in eliciting testimony from the foster mother, foster father, and investigating officer, all vouching for the T.P.'s credibility, and by referring to this testimony again during closing arguments.

#### *i  The prosecutor committed misconduct.*

#### a. **Prosecutorial Misconduct in Questioning Witnesses**

Perry first asserts that the prosecutor committed misconduct by eliciting testimony from the foster mother, foster father, and the investigating officer, Teneyck, vouching for the girls' credibility. During direct examination, the prosecutor asked the foster mother if T.P. had ever been dishonest with her, the foster mother replied that T.P. had, but only about immaterial things. In addition, the prosecutor asked the foster father during redirect examination whether he noticed any signs of dishonesty on the girls' faces when they reported the allegations against Perry, and the foster father replied that he had not. Finally, the prosecutor asked the Teneyck on direct examination whether he believed that T.P. & H.P. were being truthful in their allegations against Perry. Teneyck replied that he believed T.P. was being truthful; he did not offer his opinion as to the truthfulness of H.P. as the court sustained defense counsel's objection to this question.

The Supreme Court of the Territory of Idaho stated over one-hundred years ago, that a question calling "for the opinion of one witness as to the truthfulness of another . . . is clearly an invasion of the province of the jury, who are the judges of the credibility of witnesses." *People v. Barnes*, 2 Idaho 148, 150, 9 P. 532, 533 (1886). Lay witnesses are not permitted to testify as

---

[8] *Teague v. Lane*, 489 U.S. 288 (1989).

to matters of credibility. *Reynolds v. State*, 126 Idaho 24, 30-31, 878 P.2d 198, 204-05 (Ct. App. 1994). Furthermore, we have held that "expert testimony which does nothing but vouch for the credibility of another witness encroaches upon the jury's vital and exclusive function to make credibility determinations, and therefore does not 'assist the trier of fact' as required by Rule 702." *State v. Perry*, 139 Idaho 520, 525, 81 P.3d 1230, 1235 (2003) (quoting *U.S. v. Charley*, 189 F.3d 1251, 1267 (10th Cir. 1999)). We hold that the prosecutor committed misconduct by eliciting vouching testimony from these witnesses. However, the record in this case does not show the clear violation of an unwaived constitutional right. As noted above, part of the inquiry in determining whether a clear violation exists is whether the record demonstrates that the decision whether or not to object to an error at trial was strategic. Here there were multiple instances of the prosecutor eliciting improper vouching testimony from witnesses, but defense counsel chose to object only once. Where defense counsel objected the Court sustained that objection, and harm was avoided. It appears to be a reasonable possibility, under the facts of this case, that defense counsel's failure to object to the prosecutor's improper conduct in both eliciting vouching testimony and later referencing that testimony during closing was a strategic decision. Therefore, this claim cannot properly be dealt with in a fundamental error review and is more properly pursued on post-conviction relief where additional fact-finding may be conducted to determine the motivation for defense counsel's failure to object.

### b. Prosecutorial Misconduct in Closing Statement

Perry next asserts that four statements made by the prosecutor during her closing argument constituted error. First, the prosecutor said:

> [The foster mother] told you that they are regular kids, no big issues, no problems as far as, you know, being excessively dishonest. They tell little untruths or they have about things that are small. But every child does that. You have to look, when you're reviewing the credibility of witness's testimony, at their credibility. If [the foster mother] had wanted you to believe that these two girls were absolute angels, she probably thinks that they are, but if she had wanted to bolster them in some way and say, well, they're – they never tell an untruth, that is what she would say. She would say, no, they're never untruthful. And that wouldn't be what we know to be true in the real world. That's not the way children are. No children are perfect. All children tell mistruths from time to time. These children tell mistruths about really incidental things, but minor things, not of any great accord. Writing on a wall, I don't think, would be considered a major lie.

Second, the prosecutor made reference to the investigating officer's testimony, stating:

[The investigating officer] told you that he has a lot of training and experience in interviewing both adults and children, what the differences are. Stress levels of girls or children are higher. He didn't detect any signs that he normally would see if he was thinking that something was – he didn't detect any signs of dishonesty in these girls either.

Third, the prosecutor said:

All three witnesses [the foster mother, the foster father, and the officer] that they told this to individually believed them. All three.

Fourth and finally, the prosecutor stated:

There hasn't been any indication here of anything from these girls but honesty. If they had wanted to tell a lie, then why not just go all the way . . . . Why not if you're going to lie.

By the time of closing argument, the prosecutor had been warned twice by the district court about the impropriety of eliciting vouching testimony from the witnesses. Nevertheless, the prosecutor went on to refer to the vouching testimony listed above. There was no excuse for this conduct and it was clearly improper. Therefore, the prosecutor's statements during closing argument constitute misconduct. However, such misconduct did not clearly violate any of Perry's constitutional rights, and it therefore cannot constitute fundamental error.

> *ii. Only one act of prosecutorial misconduct was objected to during trial and the trial court properly sustained the objection.*

As noted above, the prosecutor committed misconduct during her questioning of the foster mother, foster father, and investigating officer, as well as during her closing statement. However, defense counsel chose to object to only one such instance of misconduct, when the prosecutor—after establishing Officer Teneyck's training and experience in detecting signs of deceptiveness in interviewees—asked Teneyck whether T.P. displayed any signs of untruthfulness during her interview. Teneyck responded that she had not. Later, the prosecutor asked the same question regarding H.P., but this time defense counsel objected before Teneyck could answer. The district court sustained counsel's objection, stating: "This just seems to be a way of trying to vouch for the witnesses' credibility and I think it's inadmissible. It's up to the jury to decide whether the witnesses are credible or not." We hold that the prosecutor's question constituted misconduct, in questioning a witness on the credibility of another witness, infringing upon the province of the jury. However defense counsel's timely objection, sustained by the trial court, kept impermissible evidence from the jury. Therefore, no error occurred and harmless error analysis is inapplicable.

25

**D. Cumulative Error**

In the alternative, Perry argues that the accumulation of errors that occurred during trial, in the aggregate, were sufficient to warrant a new trial. Perry argues that even if this Court determined that the errors listed above are not fundamental and/or are harmless; they still constitute "errors" and must be considered under the cumulative error doctrine. We disagree.

Under the doctrine of cumulative error, a series of errors, harmless in and of themselves, may in the aggregate show the absence of a fair trial. *State v. Martinez*, 125 Idaho 445, 453, 872 P.2d 708, 716 (1994). However, a necessary predicate to the application of the doctrine is a finding of more than one error. *See State v. Hawkins*, 131 Idaho 396, 407, 958 P.2d 22, 33 (Ct. App. 1998).

In *State v. Higgins*, 122 Idaho 590, 836 P.2d 536 (1992), this Court considered whether alleged errors not objected to during trial, that were not deemed fundamental, could be reviewed under the cumulative error doctrine. After determining that the alleged act of prosecutorial misconduct did not rise to the level of fundamental error, we refused to consider the act under our cumulative error analysis. We stated: "Because we find no error in this case that was preserved for appeal, we conclude that the cumulative error doctrine does not apply." *Id.* at 604, 836 P.2d at 550. This Court was also faced with a similar issue in *State v. Raudebaugh*, 124 Idaho 758, 864 P.2d 596 (1993). After determining that the prosecutor's acts did not rise to the level of fundamental error, we refused to address whether there was error. *Id.* at 769-70, 864 P.2d at 607-08. As such, we did not include the defendant's claims of prosecutorial misconduct in our cumulative error analysis.

Thus, it is well-established that alleged errors at trial, that are not followed by a contemporaneous objection, will not be considered under the cumulative error doctrine unless said errors are found to pass the threshold analysis under our fundamental error doctrine. Here, Perry has demonstrated no error. Where defense counsel raised an objection to the prosecution's question about Teneyck's opinion as to H.P.'s truthfulness the trial court properly sustained, preventing the impermissible testimony from reaching the jury. Instances of prosecutorial misconduct that were not objected to at trial failed our threshold inquiry for fundamental error and are therefore not properly considered error for purposes of cumulative error review. As such, Perry has failed to demonstrate at least two errors, a necessary predicate to the application of our cumulative error doctrine.

## IV. CONCLUSION

For the reasons set forth above, we hold that the district court did not err in excluding evidence that T.P. had lied or exaggerated about the shower spraying incident involving H.P., which was offered to impeach T.P.'s allegations against Perry and to impeach the foster mother's testimony under I.R.E. 613(a), as any minimal probative value of the evidence was substantially outweighed by the danger of jury confusion and the waste of trial time. In addition, we hold that the alleged acts of prosecutorial misconduct, not followed by a contemporaneous objection were misconduct but do not rise to the level of fundamental error. We also hold that the prosecutor's question to the officer regarding H.P.'s truthfulness, which was objected to, was properly excluded by the trial judge and does not constitute error. Finally, we hold that Perry failed to demonstrate that at least two errors existed for purposes of applying cumulative error review. Therefore, we affirm Perry's judgment of conviction.

Chief Justice EISMANN and Justices J. JONES, W. JONES and HORTON, **CONCUR.**