IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 39416

| STATE OF IDAHO, | ) | 2012 Unpublished Opinion No. 752 |
| | ) | |
| Plaintiff-Respondent, | ) | Filed: November 30, 2012 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| MICHAEL DWAIN PULSIFER, | ) | THIS IS AN UNPUBLISHED |
| | ) | OPINION AND SHALL NOT |
| Defendant-Appellant. | ) | BE CITED AS AUTHORITY |
| | ) | |

Appeal from the District Court of the Fifth Judicial District, State of Idaho, Twin Falls County. Hon. Randy J. Stoker, District Judge.

Judgment of conviction for possession of methamphetamine, <u>affirmed</u>.

Nevin, Benjamin, McKay & Bartlett, LLP; Deborah A. Whipple, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Russell J. Spencer, Deputy Attorney General, Boise, for respondent.

LANSING, Judge

Michael Dwain Pulsifer pleaded guilty to possession of methamphetamine. He appeals from the judgment of conviction contending that the district court erred by failing to sua sponte order a competency evaluation. We affirm.

## I.

## BACKGROUND

Pulsifer was charged with possession of methamphetamine with intent to deliver after drug evidence was found in his vehicle during a traffic stop. On June 13, 2011, pursuant to a plea agreement, Pulsifer pleaded guilty to a reduced charge of possession of methamphetamine. Among other terms, the agreement provided that the State could recommend any sentence it felt appropriate, including the allowable maximum term of imprisonment of seven years. At the change of plea hearing, Pulsifer stated that he understood this term of the agreement. When asked by the district court to state in his own words what he did that made him guilty of the

1

charge, Pulsifer said that "[u]nder Idaho law I possessed methamphetamine" and he further stated that he knew the substance was methamphetamine. The district court ordered the preparation of a presentence investigation report (PSI) and an Idaho Code § 19-2524 substance abuse evaluation, and scheduled sentencing for August 22, 2011.

On July 14, 2011, Pulsifer participated in the court-ordered substance abuse evaluation where one of his tasks was to fill out a form indicating his recent drug use. The evaluator noted that Pulsifer repeatedly would pencil-in the "bubble" that indicated he had most recently used methamphetamine in the last one to three months, then erase his answer and fill in that he had most recently used methamphetamine in the last four to twelve months. Pulsifer also told the substance abuse evaluator that he did not feel that treatment would benefit him because he did not have a drug problem. Pulsifer also told the evaluator that he had never been diagnosed with or received treatment for a mental, emotional, behavioral, or psychological problem. The evaluator concluded that Pulsifer did have a drug problem and recommended treatment.

As a condition of his stipulated presentencing release from custody on bond, Pulsifer was required to participate in a court compliance program, which called for, among other things, random drug testing. In the period beginning on July 12, 2011, and ending on August 4, 2011, Pulsifer failed to appear for testing three times and tested positive for methamphetamine on two other occasions. Pulsifer was re-arrested and his bond was revoked, but on August 16, 2011, he again posted bond and was released.

Less than one week before the scheduled sentencing hearing, defense counsel moved to postpone sentencing in order to afford Pulsifer the opportunity to complete an intensive outpatient drug treatment program that he had just begun. At a hearing on the motion, defense counsel also informed the court that Pulsifer had been in a car accident within the previous year and "that he may have suffered some brain damage during that time that is concerning to his friends and family and may be causing some lingering issues in the mental health department." Defense counsel requested a "mental health evaluation" to "determine the extent of any impairment that may have happened and whether he is in need of any current mental health treatment." The district court granted both motions, ordering an I.C. § 19-2524 mental health evaluation and postponing sentencing until this could be done.

Pulsifer failed to appear at the scheduled October 17, 2011, sentencing hearing. On November 14, 2011, the date finally set for sentencing, Pulsifer appeared, but the district court

had to suspend the hearing for an hour because Pulsifer had failed to attend a presentencing scheduled appointment with his attorney to review the PSI and evaluations. After the consultation, the hearing was resumed and the State and defense counsel made their sentencing recommendations. Pulsifer then addressed the court. He attempted to excuse and explain, in an relatively inarticulate manner, his criminal conduct in the case at hand, his numerous parole and probation violations in previous criminal cases, his failure to attend the scheduled meeting with his attorney, his failed drug tests while in the court compliance program, and, contrary to statements he made to the substance abuse evaluator, he acknowledged that he had a drug problem and said he wished for treatment.

The district court imposed a sentence of incarceration. Pulsifer appeals.

## II.

## ANALYSIS

As his sole claim of error on appeal, Pulsifer contends that the district court erred by failing to sua sponte order a competency evaluation pursuant to I.C. § 18-211. He asks this Court to vacate his judgment of conviction and sentence, and remand to the district court for this purpose.

The due process right to a fair trial encompasses a "right not to be tried or convicted while incompetent to stand trial." *Drope v. Missouri*, 420 U.S. 162, 172 (1975). The United States Supreme Court stated that it "has long been accepted that a person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial." *Id*. at 171. This same competency standard applies for those who are pleading guilty rather than presenting a defense at trial. *Godinez v. Moran*, 509 U.S. 389, 396 (1993).

Idaho statutes implement this constitutional safeguard. Idaho Code § 18-210 provides that "[n]o person who as a result of mental disease or defect lacks capacity to understand the proceedings against him or to assist in his own defense shall be tried, convicted, sentenced or punished for the commission of an offense so long as such incapacity endures." And Idaho Code § 18-211 requires that "[w]henever there is reason to doubt the defendant's fitness to proceed as set forth in section 18-210 . . . the court shall appoint at least one (1) qualified psychiatrist or licensed psychologist . . . to examine and report upon the mental condition of the defendant to assist counsel with defense or understand the proceedings."

Pulsifer did not request a competency evaluation before the district court, and the parties disagree on the standard of review applicable in this circumstance. The State asserts that this Court should apply the fundamental error test from *State v. Perry*, 150 Idaho 209, 245 P.3d 961 (2010). The *Perry* Court held that an appellate court should reverse an unobjected-to error when the defendant persuades the court that the alleged error: (1) violates one or more of the defendant's unwaived constitutional rights; (2) the error is clear or obvious without the need for reference to any additional information not contained in the appellate record; and (3) the error affected the outcome of the trial proceedings. *Id.* at 226, 245 P.3d at 978. Conversely, Pulsifer argues that because Idaho Code § 18-211 states that a court "shall" order a competency evaluation "[w]henever there is reason to doubt the defendant's fitness to proceed as set forth in section 18-210," this affirmative statutory duty takes the inquiry outside of the strictures of *Perry*. We conclude that we need not resolve the dispute, as Pulsifer's claim fails even under his asserted statutory test.

A trial court ordinarily has no duty to independently inquire as to the competency of a defendant unless the defendant raises the issue by motion or by presenting evidence showing lack of competency. *State v. Fuchs*, 100 Idaho 341, 346, 597 P.2d 227, 232 (1979); *State v. Hayes*, 138 Idaho 761, 764, 69 P.3d 181, 184 (Ct. App. 2003). When the defendant's competency has not been expressly raised as an issue, the trial court must sua sponte inquire as to the defendant's competency only if the court entertains or reasonably should entertain a good faith doubt as to the capacity of the defendant to understand the nature and consequences of the plea. *Fuchs*, 100 Idaho at 346-47, 597 P.2d at 232-33; *Hayes*, 138 Idaho at 764, 69 P.3d at 184. Suggestive evidence includes the defendant's demeanor before the trial judge, irrational behavior of the defendant inside or outside of the courtroom, and available medical evaluations of the defendant's competence to stand trial. *Drope*, 420 U.S. at 180; *State v. Hawkins*, 148 Idaho 774, 778, 229 P.3d 379, 383 (Ct. App. 2009).

On appeal Pulsifer, without much elaboration, argues that "the suggestive evidence of competency issues included concerns voiced by [his] family and friends as conveyed to the court by counsel; repeated statements in the mental health evaluation that [he] did not appear to understand the legal proceedings; [his] confusion about when his attorney appointments were; [his] inability to fill out an answer sheet [in an assessment] by bubbling in his intended answers; counsel's request for an evaluation; and [his] statements at sentencing which raise concerns about his ability to form and convey coherent thoughts." We disagree with Pulsifer's

4

characterizations of some of the information known to the court, and we disagree that these circumstances gave the district court reason to doubt Pulsifer's competence to plead guilty or to be sentenced such that a competency evaluation was required.

As related by counsel to the district court, Pulsifer's family and friends did not question his competence. Instead, they said that as a result of a previous car accident "he may have suffered some brain damage during that time that is concerning . . . and may be causing some lingering issues in the mental health department." The mental health evaluator noted in her report that during the interview Pulsifer was relaxed, had normal speech for rate and volume, his thoughts were logical, he did not have any unusual thoughts or altered perceptions, his affect was appropriate, he was positive and friendly, he was oriented to person, place, time, and purpose, and that he was of average intellectual functioning, but that Pulsifer contended that his memory was "shot" because of the accident. The evaluator found no evidence of mental illness and did not question Pulsifer's competence, but instead recommended that he "be followed by a medical provider who will be able to assist him after he received his brain injury."

Contrary to Pulsifer's argument on appeal, his statements to the evaluator did not suggest that he did not understand the legal proceedings. Instead, Pulsifer told the evaluator that he pled guilty to the reduced "simple possession" charge "but he is not guilty." He reported that he believed he had pleaded guilty to a charge that would not send him back to prison, but had since learned that this charge could result in a prison term. He felt that he misunderstood the plea agreement when he pled guilty. He stated he would not have a problem with being on probation now but did not want to go back to prison, especially for something he did not do. In light of the absence of any indication of confusion about the terms of his plea agreement during the plea hearing, Pulsifer's acknowledgement in the plea agreement that his plea could subject him to a seven-year prison sentence, and the court's notification to him at the plea hearing that the charge carried a possible seven-year sentence, his statements to the evaluator are more indicative of Pulsifer's wishful thinking about the eventual sentencing outcome than it is of mental incapacity. It is also important to note that Pulsifer did not exhibit this "confusion" until after he repeatedly tested positive for methamphetamine use while in the court compliance program, which significantly lessened any chance he had for probation. Under these circumstances, Pulsifer's claimed confusion about a term of his plea agreement falls far short of a showing that he lacked the capacity to understand the legal proceedings against him.

5

Also contrary to his appellate argument, Pulsifer did not show an "inability to fill out an answer sheet [in a drug assessment] by bubbling in his intended answers." His actions of marking an answer indicating that he had most recently used methamphetamine in the last one to three months and then erasing that answer and responding that he had most recently used methamphetamine in the last four to twelve months, are more indicative of a design to give mitigating answers than they are of mental incapacity. In addition, the only evidence that Pulsifer was confused about the time set for his appointment to review the PSI and evaluations was his own testimony at the sentencing hearing. The record shows that during this same time frame Pulsifer was missing many of his scheduled appointments for drug testing, which is no more indicative of confusion than indicative of a rational attempt to avoid failing the tests and disclosing a recent use of methamphetamine.

Finally, the fact that Pulsifer's allocution at the sentencing hearing was relatively inarticulate does not establish that he was incompetent to plead guilty or to be sentenced. Our Supreme Court has observed that "incompetence" does not mean merely an incapacity to act with legal sophistication. In *State v. Powers*, 96 Idaho 833, 537 P.2d 1369 (1975), the Court explained:

> Incompetency must be a relative judgment which takes into account the average level of ability of criminal defendants. Many defendants lack the intelligence or the legal sophistication to participate actively in the conduct of their defense. But enlarging the class of persons considered incompetent to stand trial to include all such defendants would fundamentally alter the administration of the criminal law. The standard of rational understanding emphasized in *Dusky* must be taken to mean no more than that the defendant be able to confer coherently with counsel and have some appreciation of the significance of the proceeding and his involvement in it. Many defendants who have some intellectual or physical handicap or emotional disturbance preventing them from functioning at their normal level of effectiveness can still meet such a standard. The question is one of degree; the purpose of the law is not to attempt to compensate all the inevitable disparities in innate abilities among defendants, but to identify those instances where the purposes of incompetency law are most directly relevant.

*Id.* at 842-43, 537 P.2d at 1378-79 (quoting Note, *Incompetency to Stand Trial*, 81 HARV. L. REV. 454, 459 (1967)).

This is not a close case. The record shows that Pulsifer understood that he was pleading guilty to possession of methamphetamine and that this was a crime that could result in his incarceration for up to seven years. The record contains no indication, from Pulsifer's trial

counsel or otherwise, that Pulsifer was unable to rationally understand the nature of the proceedings, communicate with counsel, or assist in his own defense, nor is there any evidence that Pulsifer suffered from delusional thoughts or engaged in bizarre behavior. Even had the district court gone through the file with a fine-toothed comb, as has appellate counsel for the defendant, Pulsifer's individual peculiarities would not have established reason to doubt his competence.

The record does not establish that the district court erred by failing to sua sponte order a competency evaluation. Accordingly, the judgment of conviction and sentence are affirmed.

Chief Judge GRATTON and Judge GUTIERREZ **CONCUR.**