IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 38910

| STATE OF IDAHO, | ) | 2013 Unpublished Opinion No. 789 |
| | ) | |
| Plaintiff-Respondent, | ) | Filed: December 12, 2013 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| IRWIN RYAN RAY ADAMS, | ) | THIS IS AN UNPUBLISHED |
| | ) | OPINION AND SHALL NOT |
| Defendant-Appellant. | ) | BE CITED AS AUTHORITY |
| | ) | |

Appeal from the District Court of the Fifth Judicial District, State of Idaho, Jerome County. Hon. John K. Butler, District Judge.

Judgment of conviction for felony vehicular manslaughter with gross negligence, <u>affirmed</u>.

Sara B. Thomas, State Appellate Public Defender; Erik R. Lehtinen, Chief, Appellate Unit, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; John C. McKinney, Deputy Attorney General, Boise, for respondent.

_____

GUTIERREZ, Chief Judge

Irwin Ryan Ray Adams appeals from his judgment of conviction after a jury found Adams guilty of felony vehicular manslaughter with gross negligence, in violation of Idaho Code § 18-4006(3)(a). For the reasons that follow, we affirm.

## I.

## FACTS AND PROCEDURE

Adams was driving with a passenger, his friend, when Adams crashed his car. The car crash resulted in severe injury to the friend, and the friend eventually died as a result of his injuries. Although Adams contended his car was being chased at the time of the crash, others asserted that Adams was chasing a car driven by Adams' girlfriend's mother's friend (the chased driver) and carrying Adams' girlfriend, the girlfriend's baby, and the girlfriend's mother. The State subsequently charged Adams via an information with vehicular manslaughter with gross negligence "by driving his motor vehicle at a high rate of speed, to-wit: 108 miles per hour in a

50 miles per hour zone trying to chase down another vehicle and crashing his motor vehicle which caused the death of the victim: [the friend]."

At trial, the prosecutor called seventeen witnesses.[1]  One saw the crash occur.  Another was the first person to stop at the crash scene.  Two law enforcement officers from Jerome County testified along with three law enforcement officers from the Idaho State Police, including an accident reconstruction expert witness.  The chased driver and the girlfriend's mother testified they were being chased by Adams.  The victim's sister and four other individuals who talked to Adams while Adams was hospitalized also testified.  Two other witnesses testified they were involved in a road-rage-type incident with Adams the day before.  The defense called Adams' father, Adams' father's fiancée, Adams' brother, and Adams' sister.  The defense also called two State witnesses, an Idaho State Police officer who talked to Adams, and the sister of the victim.  In addition, Adams himself testified.

During the trial, the prosecutor offered several exhibits.  Exhibit 131 was an audio recording of an interview between an Idaho State Police patrol sergeant and Adams while Adams was hospitalized.  Exhibit 134 was a video recording from a Jerome County detective's car data recording system as the detective arrived on the scene.  The video exhibit not only included video, but had accompanying audio of Adams claiming he had been chased.  Both exhibits were admitted without objection and published to the jury.

In the closing arguments, defense counsel asked the jury to replay the video exhibit in the jury room, arguing the video would support the defense's theory of the case.  Defense counsel also referenced the audio exhibit during the closing argument, again arguing the audio exhibit would support the defense's theory of the case.  The prosecutor, in rebuttal, also referred to the video exhibit.  However, after the closing arguments concluded, the district court advised the jury that it could not replay the exhibits during deliberations because the jury room did not have technological capability.  After the court excused the jury to the jury room, defense counsel placed an objection on the record as to the jury's inability to replay the audio and video exhibits in the jury room.  Thereafter, the case was deliberated by the jury for over seven hours before the jury found Adams guilty of vehicular manslaughter with gross negligence.  The court then

---

[1]      One of the seventeen witnesses provided little information relevant to this case.

sentenced Adams to a unified term of ten years, with three years determinate, imposed a fine of $5,000 and court costs, and later imposed restitution. Adams appeals.

## II.

## ANALYSIS

Adams argues the district court erred by not making the audio and video exhibits available to the jury during jury deliberations. Adams contends this error was prejudicial and asks this Court to vacate his conviction and remand the case for a new trial.

The Idaho Supreme Court has set forth the requirements for a defendant challenging objected-to, non-constitutionally-based error:

> In order to avoid confusion and promote equal application of the law, Idaho shall from this point forward employ the *Chapman* [*v. California*, 386 U.S. 18 (1967),] harmless error test to all objected-to error. A defendant appealing from an objected-to, non-constitutionally-based error shall have the duty to establish that such an error occurred, at which point the State shall have the burden of demonstrating that the error is harmless beyond a reasonable doubt.

*State v. Perry*, 150 Idaho 209, 222, 245 P.3d 961, 974 (2010).

Adams contends the failure to make the audio and video exhibits available to the jury during deliberations was an error under Idaho Code § 19-2203.[2] Assuming without deciding that the district court erred by failing to make the audio and video exhibits available to the jury during deliberations, we must determine whether the State proved the error is harmless beyond a reasonable doubt. *Perry*, 150 Idaho at 222, 245 P.3d at 974. This error, according to Adams, was prejudicial, and not harmless beyond a reasonable doubt, for three reasons: (1) the district court deemphasized the evidence favorable to Adams; (2) the evidence was important to the believability of Adams' statements after the crash, specifically concerning Adams' emotional condition and his version of events; and (3) the timing of the alleged error exacerbated the

---

[2]     Idaho Code § 19-2203 provides:

> **Papers which may be taken by jury.** Upon retiring for deliberation, the jury may take with them all exhibits and all papers (except depositions) which have been received in evidence in the cause, or copies of such public records or private documents given in evidence as ought not, in the opinion of the court, to be taken from the person having them in possession. They may also take with them the written instructions given and notes of the testimony or other proceedings on the trial, taken by themselves or any of them, but none taken by any other person.

3

prejudice. The State contends that even if an error occurred, the error is harmless beyond a reasonable doubt because: (1) the audio and video exhibits were published to the jury during the State's case; (2) the jury had ample evidence of Adams' emotional condition when he made his statements after the crash; and (3) the evidence of Adams' guilt was overwhelming.

Adams' first argument, that the district court deemphasized the evidence favorable to him, is unfounded. The judge did not instruct the jury to place greater weight or emphasis on the evidence, nor did the judge opine on the defendant's guilt or innocence. *State v. Johnson*, 138 Idaho 103, 106, 57 P.3d 814, 817 (Ct. App. 2002) ("A judge's remark will be deemed prejudicial if it constitutes a comment on the weight of the evidence or indicates an opinion of the court as to the defendant's guilt or innocence."). Rather, the judge informed the jury that the jury room lacked the technological capability to play the audio and video exhibits:

> Thank you. All right, ladies and gentlemen of the jury, that does conclude the closing arguments in this matter.
> One thing I do want to clarify is that both counsel have said that you can listen to the audios, that is not the case. The audios are in evidence. You must remember what it was you heard, what you saw. Your deliberations must occur within the jury room and the jury room does not have the capability of playing those things.

As to Adams' second argument, that the evidence was important to the believability of Adams' statements after the crash, we are persuaded that there was ample evidence available to the jury to consider the statements originally offered by Adams and the believability of those statements. Adams testified at trial and the State also presented testimony from witnesses who described Adams' emotional condition after the crash and testified to what Adams told them after the crash. During the trial, an Idaho State Police corporal testified that upon arriving at the scene of the crash, Adams was visibly upset: "It appeared that he was possibly crying, but his demeanor was that he was very upset at the time." Moreover, according to the corporal, Adams told the corporal that he was traveling close to 75 mph, responded to a few questions with "I don't know," and told the corporal that he was being chased. A Jerome County deputy also reported to the scene and asked Adams if he was driving the car; Adams responded he did not know. After the deputy overheard a phone call between Adams and someone else, in which the deputy asserted he heard Adams admit to driving and doing about 80 mph, the deputy re-questioned Adams:

I asked him again, "Were you driving? I just heard you say you were driving."

4

He says, "My friend's hurt. I don't know," and "We were being chased." And then he became even more frantic. He started crying hysterically, put his hands on top of his head squeezing his head and just sat down. At that point I just stopped the questioning . . . .

Another witness testified she was the first person to stop at the crash and, after checking on the friend in the car, she went to Adams and asked Adams who he was. According to the witness, Adams could not remember his name and told her he was being chased. Moreover, the witness testified Adams was upset, crying, and distraught and testified that Adams could not remember his friend's name. Thus, there were at least three witnesses who testified for the State, subject to cross-examination, to various statements made by Adams and to the emotional condition of Adams.

As to Adams' third argument, we are not persuaded that the timing of the district court's announcement exacerbated any resulting prejudice from the jury not reviewing the exhibits because, in the closing arguments, Adams' defense counsel extensively recounted the content of the video exhibit and reminded the jury of what was heard in the audio exhibit. Thus, for their deliberations, the jurors were able to consider the exhibits relying on their memory and on the notes taken from both the published exhibits and the specific emphasis given by defense counsel at closing argument.

As the State argues, another important factor to consider is the overwhelming evidence of Adams' guilt. For instance, at trial, the State offered an expert witness, an Idaho State Police master corporal and accident reconstruction expert, who testified she concluded the "minimum speed . . . was 108.02 miles per hour." The victim's sister testified she talked to Adams when Adams was hospitalized while her brother was still alive, and testified Adams initially told her he was going around 65 or 70 mph, but after she questioned him more, "he told me that he was probably going around a hundred." A high school acquaintance of Adams testified that, while Adams was hospitalized, she overheard Adams say that "he didn't realize how fast that he was going until he looked down and saw that he was going 110." The acquaintance also testified Adams had "switched his story around" concerning who was chasing who. Other witnesses also recounted that Adams told them he had been going 110 mph and had been chasing his girlfriend. Thus, there was ample evidence of Adams changing his story and of Adams indicating that he had driven around 110 mph.

5

In sum, we are persuaded that the State has met its *Perry* and *Chapman* burden to show the asserted error is harmless beyond a reasonable doubt. The jury viewed and listened to the video exhibit during the trial and the jury listened to the audio exhibit during the trial. To be sure, the jury had the opportunity in the deliberations to recall what happened in the audio and video exhibits based on the jurors' memories and notes. Therefore, any error in not making the audio and video exhibits available to the jury during deliberations is harmless.

## III.

## CONCLUSION

We conclude that any error by the district court in not making the audio and video exhibits available to the jury during deliberations is harmless beyond a reasonable doubt. Accordingly, Adams' judgment of conviction is affirmed.

Judge LANSING and Judge GRATTON **CONCUR.**