**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 45629**

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) **Opinion Filed: October 8, 2019** |
| Plaintiff-Respondent, | ) |
| | ) **Karel A. Lehrman, Clerk** |
| v. | ) |
| | ) |
| BILLY LEE JOSLIN, JR., | ) |
| | ) |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the First Judicial District, State of Idaho, Kootenai County. Hon. Cynthia K.C. Meyer, District Judge.

Judgment of conviction for rape and attempted strangulation, <u>affirmed</u>.

Eric D. Fredericksen, State Appellate Public Defender; Maya P. Waldron, Deputy Appellate Public Defender, Boise, for appellant. Maya P. Waldron argued.

Hon. Lawrence G. Wasden, Attorney General; Lori A Fleming, Deputy Attorney General, Boise, for respondent. Jeff D. Nye argued.

_____

HUSKEY, Judge

Billy Lee Joslin, Jr. appeals from his judgment of conviction entered upon the jury verdict finding him guilty of rape and attempted strangulation. On appeal, Joslin argues the district court erred when it allowed Joslin's ex-wife to testify. Specifically, Joslin claims the district court abused its discretion when it found the ex-wife's testimony was admissible under Idaho Rule of Evidence 404(b). To the extent the district court erred in admitting the testimony from Joslin's ex-wife, any such error was harmless and we affirm the district court's judgment of conviction.

1

# I.

## FACTUAL AND PROCEDURAL BACKGROUND

The State charged Joslin by information with rape, Idaho Code § 18-6101, and attempted strangulation, I.C. § 18-923.[1]  The State also charged Joslin with being a persistent violator, I.C. § 19-2514.

The State filed a motion in limine, pursuant to Rule 404(b), seeking to admit evidence that in 2006 Joslin entered the home of his ex-wife, strangled her until she was unconscious, and raped her.  In its brief in support of the motion in limine, the State argued the evidence of Joslin's prior conduct was admissible because it was part of a common plan and because it was relevant for purposes of disproving consent.  Joslin objected to the State's intent to use Rule 404(b) evidence.

After a hearing on the motion, the district court issued a memorandum decision granting the State's motion.  The district court explained the evidence was admissible because it was probative of plan, identity, preparation, and absence of mistake or accident.

At trial, the State presented evidence regarding the injuries sustained by the victim.  The State called eighteen witnesses, including the victim.  The victim testified that on August 25, 2016, she returned to her apartment during the lunch hour.  According to the victim, Joslin grabbed her by the neck and choked her in a way that she lost and regained consciousness several times.  While doing so, Joslin also placed a hand over the victim's mouth, so she was limited to intermittently breathing through her nose.  Joslin then had intercourse with the victim.

In addition to the victim's testimony, the jury saw photographs of the victim's face, neck, and body which showed abrasions, redness, and swelling.  The jury heard testimony from healthcare workers who attended to the victim, listened to her story about being choked and raped, and saw the injuries.  The jury also heard from the victim's coworkers who explained how the victim was distraught and injured when she returned to work after lunch and recounted the story of being raped and choked during her time away from work that afternoon.  The nurses and an officer also testified regarding the chain of custody and the transportation of the DNA

---

[1]     The original complaint charged Joslin with felony rape, felony attempted strangulation, felony burglary, felony kidnapping, and felony robbery.  The State later amended the complaint and added a persistent violator charge.  The State amended the complaint for a second time and removed the felony burglary and felony robbery charges.  The kidnapping charge was also dismissed prior to trial.

evidence. A lab technician testified the evidence in the victim's rape kit tested positive, and a forensic scientist explained Joslin's DNA was found in the victim.

The State's final witness was Joslin's ex-wife, whose testimony was the subject of the Rule 404(b) dispute prior to trial. Joslin renewed his objection to the ex-wife's testimony, and the district court allowed for an offer of proof wherein Joslin's ex-wife testified outside the presence of the jury. Following the offer of proof, the district court found the testimony of the ex-wife was admissible under Rule 404(b) as proof of motive, opportunity, intent, preparation, plan, and absence of mistake or accident. The district court also gave the jury a limiting instruction that applied to the ex-wife's testimony.[2] Joslin presented no evidence on his behalf and did not testify.

The jury found Joslin guilty of felony rape and felony attempted strangulation. Joslin admitted to the persistent violator enhancement. The district court entered a judgment and imposed concurrent, determinate life sentences. Joslin timely appeals.

## II.

## STANDARD OF REVIEW

Error is not reversible unless it is prejudicial. *State v. Stell*, 162 Idaho 827, 830, 405 P.3d 612, 615 (2017). With limited exceptions, even constitutional error is not necessarily prejudicial error. *Id.* Thus, we examine whether the alleged error complained of in the present case was harmless. *See State v. Lopez*, 141 Idaho 575, 578, 114 P.3d 133, 136 (Ct. App. 2005). A defendant appealing from an objected-to, non-constitutionally-based error shall have the duty to establish that such an error occurred, at which point the State shall have the burden of demonstrating that the error is harmless beyond a reasonable doubt. *State v. Montgomery*, 163 Idaho 40, 46, 408 P.3d 38, 44 (2017). In other words, the error is harmless if the Court finds that the result would be the same without the error. *Id.*

## III.

## ANALYSIS

The parties disagree as to the admissibility of Joslin's ex-wife's testimony. Assuming without deciding that the district court erred when it allowed Joslin's ex-wife to testify, the

---

[2]  The instruction stated, in relevant part: "Such evidence may be considered by you only for the limited purpose of proving the defendant's motive, opportunity, intent, preparation, plan, knowledge, or absence of mistake of [sic] accident."

determinative issue on appeal is whether the district court's admission of the ex-wife's testimony was harmless error. Both parties agree the applicable standard is the standard articulated in *Chapman v. California*, 386 U.S. 18 (1967): where a violation is followed by a contemporaneous objection, a reversal is required unless the State proves beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained. *Id*. at 24; *see also State v. Perry*, 150 Idaho 209, 221, 245 P.3d 961, 973 (2010). However, the parties disagree on the application of the standard. Joslin asserts the "inquiry . . . is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in this trial was surely unattributable to the error." *Sullivan v. Louisiana*, 508 U.S. 275, 279 (1993). The State disagrees and argues this Court must simply determine whether the result would have been the same without the error.

The United States Supreme Court applied the *Chapman* standard in *Neder v. United States*, 527 U.S. 1 (1999). There, the Court noted that, like in cases in which evidence had been admitted in violation of the right to confront witnesses, the harmless error test for Fifth and Sixth Amendment violations and for instructional error "must be essentially the same: Is it clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error?" *Id*. at 18. The Court further explained that a reviewing court applying a harmless error test does not become in effect a second jury to determine whether the defendant is guilty. *Id*. at 19. Instead, "a court, in typical appellate-court fashion, asks whether the record contains evidence that could rationally lead to a contrary finding with respect to the [error]." *Id*.

In subsequent cases, the United States Supreme Court has noted "since *Chapman*, the Court has consistently made clear that it is the duty of a reviewing court to consider the trial record as a whole and to ignore errors that are harmless, including most constitutional violations." *United States v. Hasting*, 461 U.S. 499, 509 (1983) (citations omitted). In *Hasting*, the Court explained how to apply the *Chapman* test: "The question a reviewing court must ask is this: absent the [error], is it clear beyond a reasonable doubt that the jury would have returned a verdict of guilty?" *Hasting*, 461 U.S. at 510-11. The Court noted *Chapman* required consideration of the entire record prior to reversing a conviction for constitutional errors that may be harmless. *Hasting*, at 509 n.7. The Court then reviewed the evidence in the case and determined the error was harmless because based on the evidence presented to the jury, "a more compelling case of guilt is difficult to imagine." *Id*. at 511.

Joslin asks this Court to read the *Sullivan* language into the *Chapman* standard. This we decline to do. While it is true the *Perry* Court quotes the language from *Sullivan*, the Court did so when discussing the type of claim that gives rise to structural error, not harmless error. *Perry*, 150 Idaho at 223, 245 P.3d at 975. While the Supreme Court in *Perry* adopted the *Chapman* harmless error test, it did not specify how the test should be applied. But since *Perry*, the Idaho Supreme Court has explained how to apply the harmless error standard. In *Montgomery*, the Supreme Court explained:

> "A defendant appealing from an objected-to, non-constitutionally-based error shall have the duty to establish that such an error occurred, at which point the State shall have the burden of demonstrating that the error is harmless beyond a reasonable doubt." *Perry*, 150 Idaho at 222, 245 P.3d at 974. "In other words, the error is harmless if the Court finds that the result would be the same without the error." *State v. Almaraz*, 154 Idaho 584, 598, 301 P.3d 242, 256 (2013).

*Montgomery*, 163 Idaho at 46, 408 P.3d at 44.

Thus, in deciding whether an alleged error is harmless, this Court looks to the entire record and the evidence produced at trial to determine whether we can find "the jury actually rested its verdict on evidence establishing the presumed fact beyond a reasonable doubt, independently of the assumed inadmissible evidence." *Yates v. Evatt*, 500 U.S. 392, 404 (1991).[3]

In this case, Joslin would have been convicted even without the testimony of his ex-wife. At trial, the State called eighteen witnesses to testify, the last of which was Joslin's ex-wife. The witnesses included healthcare workers, employees at the sheriff's office, coworkers of the victim, family members of the victim, lab technicians, and a member of the criminal investigations unit of the prosecutor's office. The victim also testified on her own behalf.

The emergency room doctor who examined the victim explained the victim said she was raped and choked. The doctor commented the victim had "abrasions around the neck, she had subconjunctival hemorrhages, bleeding over the white parts of both eyes." When showing a photograph of the victim to the jury, the doctor provided the following explanation: "You can

---

[3] We recognize the standard of review for jury instructions set forth in *Yates* was disapproved in *Estelle v. McGuire*, 502 U.S. 62, 72 n.4 (1991). *Estelle* acknowledged that *Yates* might be read as endorsing a different standard of review than that which was articulated in *Boyde v. California*, 494 U.S. 370, 380 (1990). *Estelle*, 502 U.S. at 72 n.4. The Court in *Estelle* reaffirmed the *Boyde* standard was the proper formulation. *Estelle*, 502 U.S. at 72 n.4. *Yates* otherwise remains valid precedent and the language in *Yates* has been cited after *Estelle* to aid in harmless error analyses.

see the bleeding over the white parts of the eye. You can also see the small bruising indicative of increased pressure of the eyes. There's also the opposite eye, the same findings. Various bruises and abrasions, as well, but this is the hemorrhages that I was talking about." The doctor concluded the victim was "clearly assaulted, sexually assaulted and choked."

One nurse testified she saw the victim at the hospital. The victim explained she had been choked on and off repeatedly, lost consciousness, and when she woke, Joslin ordered her to take off her clothes and he had intercourse with her. The nurse testified the victim complained of pain from strangulation around her throat, neck pain, and abrasions. While the jury was shown a photograph of the victim, the nurse explained there were marks on the victim's neck, armpits, and right thigh, as well as bruising under her eyes. The nurse concluded the victim was sexually assaulted.

The jury also heard testimony from three of the victim's coworkers. Each of the coworkers saw the victim on August 25, 2016. The coworkers testified the victim did not have any noticeable injuries that morning when she arrived at work. One coworker explained the victim returned from lunch in a state of shock, holding her neck and saying that her throat hurt. That coworker testified the victim said Joslin grabbed her by the throat while the victim was entering her apartment. That coworker also explained the victim was starting to develop bruises on her neck and her eyes were getting red. Another coworker testified the victim returned to work crying. Upon her return, the victim exclaimed Joslin strangled and raped her. According to the coworker, the victim said she went home for lunch and when entering her house, Joslin grabbed her, threw her on the couch, and proceeded to choke her and rape her. A third coworker stated the victim was distraught and sobbing when she returned to work after lunch. According to this coworker, the victim's eyes were swollen, her voice was raspy, and she explained Joslin had beaten her and choked her.

A police officer who had been called to the victim's work on August 25, 2016, also testified at trial. The officer testified when he saw the victim, she had red marks on her neck, her eyes were puffy and red, there was blood inside her eyes, and her voice was really raspy. According to the officer, the victim claimed she was raped, and thus, the officer made sure the victim went to the hospital to complete a sexual assault kit. The officer testified he accompanied the victim to the hospital. The officer also explained he took possession of the sexual assault kit from a nurse and booked it into the evidence department at the sheriff's office.

6

Regarding DNA, one nurse explained she took swabs from the victim and sent them in for testing. The jury also heard from two other nurses who confirmed DNA evidence was taken from Joslin and transferred to an officer, who booked it into evidence. A lab technician testified the evidence inside the victim's rape kit tested positive, and a forensic scientist explained she performed DNA analysis of the victim and Joslin, and concluded Joslin's DNA was found inside the victim.

The victim also testified in this case. After she explained the layout of her house and her prior relationship with Joslin, the victim described what happened when she returned to her home during lunchtime on August 25, 2016. When the victim unlocked her door, Joslin came up behind her in a rush and grabbed her by the neck. According to the victim's testimony, Joslin choked her in and out of consciousness, and would remove his hands from her throat and place them over her mouth. The jury heard the victim testify Joslin raped her.

Joslin did not take the stand and did not present any witnesses in his defense. Joslin presented no evidence to rebut the State's eighteen witnesses or to support his defense theory that the intercourse was consensual. In cross-examination, Joslin asked the doctor if the injuries could have been sustained during erotic asphyxiation, and the doctor responded he could not provide an opinion on that issue. Joslin asked the nurse the same question and the nurse unequivocally said the injuries could not have been sustained during an encounter of that type. Thus, there was no evidence in support of Joslin's theory of defense that the sexual contact was consensual, while there was overwhelming evidence that the sexual contact was not consensual.

The result in this case would have been the same even without the district court's alleged error. The entire record demonstrates overwhelming evidence upon which the jury rested its guilty verdict, independent of the testimony of Joslin's ex-wife. To the extent the district court erred in admitting the ex-wife's testimony, any such error was harmless.

## IV.
## CONCLUSION

To the extent the district court erred in admitting the testimony from Joslin's ex-wife, any such error was harmless and we affirm the district court's judgment of conviction.

Chief Judge GRATTON and Judge BRAILSFORD **CONCUR**.